IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *Plaintiff*, | : Case No. 1:23-cr-47 |
| vs. | : Judge Jeffery P. Hopkins |
| RODERICK MOORE, | : |
| *Defendant.* | : |

## ORDER DENYING MOTIONS FOR BOND/TEMPORARY RELEASE

Before the Court are *pro se* Defendant Roderick Moore's Motion for Bond (Doc. 104) and Motion for Bond/Emergency Temporary Release (Doc. 114).[1] For the reasons more fully stated below, the Defendant's motions are hereby **DENIED**.

### I.     BACKGROUND

The Indictment in this case charges the Defendant with six narcotics and firearm-related offenses, including two counts of possession with intent to distribute and attempt to distribute mixtures and substances containing a detectable amount of methamphetamine and fentanyl, two counts of possession of a firearm in furtherance of drug trafficking offenses, and two counts of possession of a firearm by a prohibited person. *See* Doc. 1.

On June 5, 2023, the Defendant appeared before Chief Magistrate Judge Karen L. Litkovitz for a detention hearing pursuant to 18 U.S.C. § 3142(f). At the close of that hearing,

---

[1] Defendant's motions are based, in part, on the condition of his wife following the birth of their daughter and he indicates that all parties would receive medical records and other information via email that would support his request for bond. *See* Doc. 114, PageID 712. To date, however, the Court has not received any documentation other than that which was provided by standby counsel *prior* to Defendant's temporary release.

1

Magistrate Judge Litkovitz found that the Defendant satisfied the requirements for pretrial detention under 18 U.S.C. § 3142(e) and ordered him detained pending trial. *See* Doc. 11.

In late-September 2023, the Defendant sought temporary release due to the anticipated birth of his daughter. *See* Docs. 73, 90. Notably, the Government *requested* that the Court grant the Defendant's motion, subject to certain conditions being imposed, because the Government "believe[d] it would be in the best interest of the mother to have the defendant available for a brief period of time." Docs. 76, 91. After careful consideration—with particular attention to the Government's position—the Court granted the Defendant's motion, and his subsequent request for a brief extension of furlough, which was unopposed by the Government. Doc. 95, 103. The Defendant was temporarily released on October 2, 2023, subject to home incarceration with GPS monitoring and supervision by Pretrial Services. Doc. 95. The Defendant was ordered to and did return to the Butler County Jail where he was being detained on October 21, 2023.

The Defendant now asks this Court to release him on bond pending trial, or in the alternative, grant him temporary release supposedly to care for his wife, their newborn, and his remaining children.

II. **LAW & ANALYSIS**

Magistrate judges have the authority to decide whether a defendant should be detained or released pending trial. *See* 18 U.S.C. § 3141, 3142. When a magistrate judge orders a defendant detained pending trial under § 3142(e) as a flight risk or danger to the community and the defendant challenges that order before the district court, the "district court reviews [the] magistrate judge's decision *de novo*." *United States v. Parish*, No. 1:21-cr-127-14, 2022 WL 3654892, at *2 (S.D. Ohio Aug. 25, 2022) (quoting *United States v. Rainey*, No. 20-cr-10005-1,

2020 U.S. Dist. LEXIS 89617, at *4 (W.D. Tenn. May 21, 2020)); *see also United States v. Watkins*, No. 13–02, 2013 WL 614252, at *3 (E.D. Ky. Feb. 19, 2013) (noting that while the Sixth Circuit has not directly addressed this issue, the Court has observed that "most district courts in the Sixth Circuit have applied the *de novo* standard of review").

A rebuttable presumption of detention arises if the district court finds that there is "probable cause to believe that the [defendant]…committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A). To rebut that presumption, the burden is on the defendant to introduce "at least some evidence" that he is neither a risk of flight nor a danger to the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). "Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

A district court must consider all four factors when deciding, *de novo*, whether the government has proven that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3141(e)(1); *Stone*, 608 F.3d at 946, including: (1) the nature and circumstances of the offense charged and whether the offense involves a controlled substance; (2) the weight of the evidence of risk of flight or dangerousness; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Stone*, 608 F.3d at 948 (explaining that the second factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt").

A. **Rebuttable Presumption**

In the case at bar, a rebuttable presumption for detention exists because there is probable cause to believe that the Defendant committed one or more drug offenses under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and certain of the charged offenses carry a maximum term of imprisonment of ten years or more. *See United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) ("The indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption") (citation omitted). At the detention hearing held, Magistrate Judge Litkovitz determined that the Defendant failed to rebut that presumption. Because the Defendant has not presented any evidence that shows that he is neither a risk of flight nor a danger to the community, this Court likewise finds that he fails to rebut the presumption in this proceeding, applying the *de novo* standard of review.

B. **Nature and Circumstances of the Offense**

The nature and circumstances of the offenses charged weigh heavily in favor of pretrial detention of this Defendant. The Defendant has been charged with multiple serious felony offenses, including possession with intent to distribute and attempt to distribute methamphetamine and fentanyl, possession of multiple firearms (a Glock .357, a Smith & Wesson .45, and a Taurus .40) in furtherance of the drug trafficking offenses, and possession by a prohibited person. Doc. 1, PageID 1–3. If convicted, the penalties are quite severe. The Defendant could face a *mandatory minimum* sentence of ten years, with the possibility of life in prison. *See* 21 U.S.C. § 841(b)(1)(A).

Not only do the crimes charged in the Indictment carry an extensive sentence. When one considers the potential harm to the public caused by the Defendant's alleged trafficking in narcotics, the concern for safety to the community exacerbates. The Defendant is alleged

4

to have possessed with the intent to distribute 40 or more grams of a mixture and substance containing a detectable amount of fentanyl. It has been well documented that as few as two milligrams of fentanyl can be lethal if consumed by an average sized man. *See Facts about Fentanyl.*[2] If proven, the fentanyl that the Defendant allegedly possessed could have resulted in multiple deaths had even a small percentage of the substance been distributed to the public.

Accordingly, the Court finds that the nature and circumstances of the offenses charged in this case weigh in favor of Defendant remaining detained pending trial.

### C. Weight of Evidence of Dangerousness

The second § 3142(g) factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. And here, the weight of the evidence of the danger posed by the Defendant's conduct is strong. The Government has presented evidence that the Defendant possessed significant quantities of illegal drugs suspected to be methamphetamine and fentanyl with the intent to distribute those substances. He also possessed multiple firearms in furtherance of those offenses while being a prohibited person.

In addition to the serious nature of these charges, the Court notes that this Defendant also has prior probation and bond violations, which suggest that any pretrial conditions of release the Court may impose to ensure the safety of the community may well be fruitless. In fact, this Court's previous attempts to impose such conditions while the Defendant was on temporary release have proven to be anything but reassuring that the Defendant's release would not pose a serious risk to the safety of the community. The Government in its response, presented evidence that less than 24 hours after returning to the Butler County Jail, on

---

[2] Available at https://www.dea.gov/resources/facts-about-fentanyl.

October 21, 2023, the Defendant was suspected on at least two occasions of being in possession of narcotics and other illegal drugs that he had apparently acquired while on supervision by Pretrial Services and home incarceration with GPS monitoring.[3]

Within a day after returning to the Butler County Jail, on October 22, 2023, correctional officers smelled an odor simulating marijuana emanating from the Defendant's cell. After searching the Defendant and his cell mate, officers recovered several small bags hidden on Defendant's person, including in his shirt and left sock. Doc. 121-1, PageID 744. Upon being searched, authorities did not recover any of these sorts of items from his cell mate. A presumptive narcotics field test was performed on the contents of one of the bags found on the Defendant and it tested positive for THC. The property was placed in an evidence bag and scheduled for transport for further analysis. Officers charged the Defendant with two violations related to possession of drugs. *Id.* at PageID 741–43.

Following that incident, authorities moved the Defendant into a "dry cell." The next day, on October 23, 2023, officers searched the Defendant's cell for additional contraband. During that search, officers recovered two more "balloons" in the floor drain, which were like those that had been found on the Defendant's person on the previous day. *Id.* at PageID 748. This property was also placed in an evidence bag for further analysis. Officers charged the Defendant with additional violations for possession of illegal drugs. *Id.* at PageID 746–47.

Days later an inmate informed officers at the Jail that illegal drugs could be found in a particular cell. The Defendant was one of two inmates housed in that cell. After removing the Defendant and his cell mate, officers searched the cell that had been identified and each

---

[3] The law permits the government to proceed by proffer or hearsay at a detention hearing. *Stone*, 908 F.3d at 948–49; *see also United States v. Webb*, 238 F.3d 426 (table), 2000 WL 1721060, at *2 (6th Cir. 2000). Accordingly, the Court finds that it is proper to consider the evidence presented in the Government's response.

inmates' personal belongings. Officers did not find contraband in the cell or the Defendant's cell mate's property which he had packed in a bag for purposes of moving to a different cell. *Id.* at PageID 752. However, upon searching the Defendant's property which was also packed in a bag, officers discovered that a container of Vaseline and yellow hair gel had both been tampered with. *Id.* at PageID 752–54. After conducting a more thorough inspection, officers recovered two small baggies and suboxone strips from the Vaseline container and a small baggie from the hair gel. *Id.* These items were also sealed in evidence bags for further analysis, and the Defendant incurred additional violations for possession of illegal drugs. *Id.* at PageID 750–51.

Based on the Defendant's alleged criminal conduct, the weight of the evidence of his dangerousness is apparent and clearly supports his continued detention.

### D. History and Characteristics of the Defendant

Next, the Court looks to the Defendant's "history and characteristics," which require the Court to consider Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

While his family ties, including his apparent close relationship with his wife and three minor children weigh in the Defendant's favor for release pending trial, several other factors do not. The Defendant has a lengthy criminal history that includes crimes of violence or threatened violence and at least one prior drug conviction. Doc. 9, PageID 24–27. Further, the Defendant has accumulated ten failures to appear for traffic offenses, and has prior probation and bond violations, including a bond violation in the state case that gave rise to

the instant offense. In that case, the Defendant had his bond revoked because he violated his electronic monitoring conditions, had a handgun in his apartment, and was found to be in possession of suboxone strips. *Id.* at PageID 27. Finally, the Government alleges that after a search warrant had been executed on an apartment believed to be involved in the instant offense, the Defendant fled for a brief period in an apparent attempt to avoid arrest. Doc. 109, PageID 692.

After carefully considering the Defendant's history and characteristics and keeping in mind that the Defendant is facing a potential lengthy term of incarceration if convicted, the Court finds that the evidence weighs heavily in favor of his continued detention.

### E. Nature and Seriousness of Danger Posed to the Community

Having considered the first three factors, the Court now turns to the fourth and final factor under § 3142(g). The Court finds that it too weighs heavily in favor of continued detention. Undoubtedly, "drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947 n.6 (citations omitted). The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Id*; *see also United States v. Whigham*, No. 22-5444, 2022 U.S. App. LEXIS 19148, at *5 (6th Cir. July 12, 2022) (concluding that an indictment for drug trafficking was enough to find that the fourth § 3142(g) factor weighed in favor of pretrial detention). Criminal offenses that involve firearms support a finding of dangerousness even if there is no evidence of a propensity for violence. *Id.* at 947 n. 7. Furthermore, the Sixth Circuit has articulated that "a defendant's 'penchant for combining firearms and drugs' demonstrates his danger to the community." *United States*

*v. Coleman*, No. 23-1445, 2023 U.S. App. LEXIS 18144, at *5–6 (6th Cir. July 17, 2023) (quoting *United States v. Voog*, 702 F. App'x 692, 694 (10th Cir. 2017) (order) (per curiam)).

Based on the foregoing, the Court concludes that final factor also favors further detention of the Defendant.

### III. CONCLUSION

For all the reasons stated, the Court finds that there are no conditions or combination of conditions that could reasonably assure the Defendant's appearance and the safety of other persons and the community. Accordingly, Defendant's Motion for Bond (Doc. 104) and Motion for Bond/Emergency Temporary Release (Doc. 114) are hereby **DENIED**.

**IT IS SO ORDERED.**

December 21, 2023

Jeffery P. Hopkins
United States District Judge