IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *Plaintiff*, | : Case No. 1:23-cr-47 |
| vs. | : Judge Jeffery P. Hopkins |
| RODERICK MOORE, | : |
| *Defendant*. | : |

## OPINION & ORDER

Defendant Roderick Moore has filed many motions. There are two presently before the Court: (1) Defendant's motion to suppress (Doc. 26) and (2) Defendant's renewed motion for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) (Doc. 54). The Court held a hearing on the motion to suppress on August 17, 2023.[1] At the onset of that hearing before proceeding to the motion to suppress, the Court issued an oral decision denying Defendant's initial motion for an evidentiary hearing under *Franks* (Doc. 28), but advised that Defendant would be permitted to file the renewed motion currently under advisement. The Government opposes both motions. Docs. 35, 70. For the reasons stated below, Defendant's motion to suppress and renewed motion for a *Franks* hearing are **DENIED**.

---

[1] This Court ordered that Defendant be designated to an appropriate facility for a psychological evaluation and report on September 8, 2023. *See* Doc. 68. A transport order was issued on January 3, 2024. *See* Doc. 139. Following a competency hearing held on May 3, 2024, this Court found Defendant competent to stand trial and to proceed *pro se*. *See* Minute Entry and Notation Order, May 3, 2024.

I. **BACKGROUND**

After several months of investigation and surveillance, Defendant Roderick Moore was indicted in the Hamilton County Court of Common Pleas on drug trafficking and firearm-related charges. Those charges were dismissed after Defendant was indicted by a federal grand jury on April 26, 2023, on charges involving the same underlying conduct. Doc. 1.

Investigators from the Cincinnati Police Department began investigating Defendant after receiving information that a drug trafficker known as "Means" was selling drugs from 3151 Gobel Avenue, Apartment 4, Cincinnati, Ohio 45211 ("Gobel Apartment"). Hearing Tr., Doc. 56, 13:4–12. Officer Brandon Connley eventually sought a search warrant for that address and upon searching the apartment, investigators recovered "approximately three and a half pounds of methamphetamine and a firearm" that was identified as being used in a homicide. *Id.* at 17:20–25; 19:5–17. Following execution of that warrant, Officer Connley then sought warrants to search Defendant's Facebook account and to search and track two T-Mobile phones. Upon further investigation, he likewise sought search warrants for 3100 Vienna Woods Drive, Apartment 7, Cincinnati, Ohio 45211 ("Vienna Woods Apartment") and five other cellular devices.

Defendant now raises a variety of arguments seeking to discredit the search warrants leading up to his arrest. Defendant argues in his renewed *Franks* motion that all the warrants contain false statements that would justify a *Franks* hearing. In that same motion, Defendant also contends that the warrants lack probable cause and are invalid. In his motion to suppress, Defendant specifically challenges the scope of the search at the Vienna Woods Apartment.

2

## II. LAW AND ANALYSIS

### A. Defendant is not entitled to a *Franks* hearing.

The Court will turn first to Defendant's request for a *Franks* hearing. Because many arguments in his motion are unrelated to *Franks*, the Court will address those separately.

"An affidavit supporting a search warrant is presumed valid." *United States v. Fountain*, 643 F. App'x 543, 545 (6th Cir. 2016) (citing *Franks*, 438 U.S. at 171). A defendant is entitled to an evidentiary hearing on the veracity of a warrant affidavit—a "*Franks* hearing"—only if the defendant (1) "makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement [] in the affidavit" and (2) "proves that the false statement [] is necessary to the probable cause finding in the affidavit." *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks*, 438 U.S. at 171–72); *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). Only when the defendant makes his preliminary showing does the Court then need to assess whether probable cause exists. *See United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997).

The defendant's burden in making this "substantial preliminary showing" is considerable. *Bateman*, 945 F.3d at 1008. The defendant's challenge

> must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171. Merely proving a falsity is not enough—the defendant must show the affiant *intended* the statement to be false or misleading. *See United States v. Schimley*, No. 1:08

CR 510, 2009 WL 5171826, at *6 (N.D. Ohio Dec. 21, 2009) ("*Franks* teaches that a mere showing of falsity is insufficient to demonstrate recklessness on the part of the affiant[.]"), *aff'd*, 467 F. App'x 482 (6th Cir. 2012). Ultimately, the decision of whether to hold a *Franks* hearing is "committed to the sound discretion of the district court." *Bateman*, 945 F.3d at 1008 (quoting *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017)).

Defendant raises several issues in his renewed *Franks* motion. First, he argues that Officer Connley made false statements in the warrant affidavits. One such statement, which appeared in several warrant affidavits, relates to the investigators' intent to locate and arrest Defendant. Defendant contends this statement was false because law enforcement were aware of Defendant's whereabouts and were presented with several opportunities to arrest him. Even assuming that this statement was material, Defendant's assertions are not supported by the record.

Three warrants, particularly the Facebook and T-Mobile warrants, indicate that law enforcement's intent was to locate and arrest Defendant. These warrants were issued between March 28, 2022, and April 7, 2022, and the affidavits supporting them clearly indicate that the Gobel Apartment warrant was executed on March 26, 2022. Doc. 54, PageID 289–98. The affidavits further state that Defendant was not present when that warrant was executed. *Id.* In his initial *Franks* motion, Defendant admitted that he and his family were on "spring vacation in Texas from the dates of March 26th through April 3rd." Doc. 28, PageID 129. This admission belies Defendant's contention that police had multiple occasions to arrest him surrounding the dates contained in the affidavit.[2] Moreover, it is highly probable that, at that

---

[2] In his renewed *Franks* motion, Defendant cites to Officer Connley's testimony during the hearing on Defendant's motion to suppress. But this too undermines Defendant's contention. During that hearing, Officer Connley testified that he had learned Defendant "almost immediately" left town and went to Texas following execution of that

time, Officer Connley was in fact attempting to locate Defendant but was thwarted by his having absconded to Texas. Based on these facts, Defendant has not shown that Officer Connley's statement was intentionally, let alone materially, false.

Defendant next argues that Officer Connley made false statements in the Gobel Apartment affidavit related to the location of the controlled buys. Defendant rationalizes that Officer Connley's rendition of these events was intentionally misleading because he allegedly suggested that the controlled buys occurred in the actual apartment unit that was the subject of the search warrant, as opposed to the common area. However, the affidavit clearly and accurately stated that the subjects entered the apartment building at Defendant's invitation and went into the common area for the transactions. Doc. 54, PageID 287.

Even if the judge reviewing the affidavit had considered the common area as part of the apartment unit, this would not invalidate the search. The Sixth Circuit said as much when rejecting a similar argument raised in *United States v. Jones*, 159 F.3d 969 (6th Cir. 1998). There, the defendant argued the residential search warrant was misleading and lacking probable cause because the affidavit suggested the alleged drug activities occurred inside the house when the events had actually taken place outside the house. Ultimately, "the fact that the incidents referred to in the affidavits took place on the premises rather than inside the house [did] not invalidate the search of the house." *Id.* at 974–75. The same is true of the search conducted at the Gobel Apartment.

Finally, as it relates to the Gobel Apartment, the affidavits supporting the warrants for search of the T-Mobile phones and Defendant's Facebook accounts failed to mention a

---

warrant, and that he returned "maybe two weeks after." Hearing Tr., Doc. 56, 18:16–19. Though he acknowledged that an arrest warrant had not yet been issued for Defendant at that time, *id.* at 19:18–20, the priority was to locate Defendant and any additional evidence of drug trafficking, and ultimately arrest him, *id.* at 37:7–38:3.

common area at all. Instead those warrants indicated that several controlled buys occurred *at* "3151 Gobel Avenue #4, Cincinnati, Ohio." Doc. 54, PageID 280, 294–97. It is beyond dispute that the affidavits accurately described what evidence had ultimately been found during the police search at the Gobel Apartment. As such, the slight variance in the description of the address where the criminal activity allegedly took place contained in the warrants is at best inconsequential, and certainly not evidence that Officer Connley *intended* to mislead the judge in making this statement.

For these reasons, Defendant has failed to make a substantial preliminary showing that Officer Connley knowingly and intentionally, or with reckless disregard for the truth, made false statements in the warrant affidavits. *Franks*, 438 U.S. at 155–56. Defendant is not entitled to a *Franks* hearing.

### B. Defendant is not entitled to suppression of evidence.

#### 1. The warrants were supported by probable cause.

Apart from the alleged false statements, Defendant also contends that all of the warrants lack probable cause.[3] Probable cause "requires only a probability or substantial chance of criminal activity." *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). This is not a high bar to clear.

To start, the warrant for the Gobel Apartment was supported by probable cause. "Although a defendant's status as a drug dealer, standing alone, does not give rise to a fair

---

[3] Defendant appears to allege that all of the warrants issued here were lacking in probable cause. For five cell phones warrants, Defendant neglected to attach the affidavits accompanying those warrants to his motion (Doc. 54, PageID 299–303). Nearly nine months later, on May 17, 2024, Defendant submitted a "supplemental affidavit" (Doc. 243) in support of several motions in this case. Although it appears that he attached some documentation related to these cell phone warrants, it is not readily apparent that this documentation includes the warrants and affidavits in their entirety. Therefore, the Court declines to address his arguments in relation to the five cell phone warrants to the extent that he alleges that these warrants lacked probable cause.

6

probability that drugs will be found in defendant's home, there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home." *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009) (citing *United States v. Frazier*, 423 F.3d 526, 532–33 (6th Cir. 2005)). Here, investigators knew that Defendant resided at the Gobel Apartment. Doc. 54, PageID 287–88. They were also aware of his reputation as "an illegal narcotics trafficker." *Id.* This information, combined with information obtained through confidential informants and surveillance—including evidence of drug transactions and controlled buys near the Gobel Apartment—established a sufficient nexus between the apartment and Defendant's drug activity so as to establish probable cause for the search. *Id.*; *see United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (finding residential warrant was supported by probable cause where supporting affidavit reflected that a confidential informant observed someone exit the home, engage in a drug transaction, and then return inside).

Similar to the affidavit for the Gobel Apartment, the affidavit for the Vienna Woods Apartment established "a fair probability that contraband or evidence of a [drug] crime" would be found there. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The affidavit established that Defendant and his spouse were reported to reside there. This information was obtained through police interviews of the apartments' management and through independent police surveillance. Officer Connley likewise averred that Defendant left the Vienna Woods Apartment for brief periods of time to engage in drug transactions and controlled buys of fentanyl, and then would immediately return. Doc. 35-2, PageID 174–78 *see, e.g.*, *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019). Between investigators and the apartment manager police interviewed, three vehicles (2013 Honda Civic, 2014 Dodge Caravan, and

2017 Chevrolet Malibu) were also observed at that location. These vehicles were either registered to, or purchased by Defendant's spouse, and Defendant was known to operate all of them. The affidavit for the Vienna Woods Apartment also detailed that methamphetamine and a Glock had been recovered from the Gobel Apartment, implicating Defendant in criminal activity. Doc. 35-2, PageID 176. All of these facts established probable cause to search the Vienna Woods Apartment as well as the three vehicles located there registered in his wife's name.

The T-Mobile search warrants were also supported by probable cause. The affidavits for them prescribe much of the same information reflected in the affidavit for the Gobel Apartment warrant, including the connection of the two telephone numbers to Defendant. The T-Mobile warrants were obtained several days apart. The first, for (513) 923-8493, was obtained on March 28, 2022—two days after execution of the Gobel Apartment warrant during the period when Defendant was believed to have absconded to Texas in order to avoid arrest. Doc. 54, PageID 293–95. Officer Connley asserted that Defendant may have been regularly using that number "to communicate with others and aid in his escape from law enforcement," and that he may have discontinued use of (513) 580-2560, which was the number that he had been relying on to conduct drug transactions. *Id.* The information set forth in the affidavit reflected a fair probability that the information sought for (513) 923-8493 would lead them to Defendant while his whereabouts were unknown following execution of a warrant that directly implicated him in criminal activity. *See United States v. Ennis*, No. 21-1093, 2022 WL 976930, at *2–3 (6th Cir. March 31, 2022).

The second T-Mobile warrant for (513) 580-2560 was sought on April 6, 2022. Doc. 54, PageID 296–98. In addition to the other information in the affidavit, the fact that this

number was used to communicate with others to arrange drug transactions established a fair probability that the information sought from it would lead investigators to other evidence related to the alleged drug offenses and ongoing criminal activity Defendant has since been charged with. *United States v. Sheckles*, 996 F.3d 330, 338–39 (6th Cir. 2021). Authorities also believed the information associated with the number would likewise help investigators locate Defendant's whereabouts. *See Ennis*, 2022 WL 976930, at *2–3.

The Facebook warrant, however, presents a closer question. Officer Connley explained in the affidavit that he was "currently attempting to locate and arrest [Defendant] for drug and weapon offenses." Doc. 54, PageID 279–80. He also stated that he was "aware individuals often use Facebook to communicate with others regarding their whereabouts in attempt to avoid cellular communications." *Id.* Even though Officer Connley did not describe how the Facebook account was related to the drug and weapons offenses, he provided in the affidavit details of the nature of the investigation as well as the contraband recovered from the Gobel Apartment, including information concerning how individuals suspected of criminal activity attempt to communicate in order to avoid police detection. Doc. 54, PageID 279–80.

Officer Connley sought a range of Facebook account information, *e.g.*, chat, messages, check-ins, for a limited period: March 20, 2022 through April 7, 2022. *Id.* at 285. He also sought historical location information from March 20, 2022 through April 7, 2022—the date the warrant was issued—as well as prospective location information through May 6, 2022. Considering the particularized time frame of the warrant and the fact that investigators were seeking to locate Defendant following execution of a warrant that resulted in the seizure of narcotics and a loaded firearm at the Gobel Apartment, the affidavit supporting the Facebook

9

warrant comfortably cleared the probable cause hurdle. *See e.g.*, *United States v. Roberts*, No. 1:22-cr-136, 2023 WL 5509261, at *2 (S.D. Ind. Aug. 25, 2023).

That being said, even if this warrant had been invalid, nothing on the face of the warrant would have caused a reasonable officer to believe that the warrant did not validly issue. Evidence "obtained in objectively reasonable reliance" on a "subsequently invalidated search warrant" need not be suppressed where an officer acts in good faith reliance on the warrant. *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). This is otherwise known as the good-faith exception. While there are four circumstances where the good faith exception does not apply, none are relevant here. *Leon*, 468 U.S. at 923. "Where an officer's reliance on a warrant is objectively reasonable, [] no additional deterrent effect will be achieved through the exclusion of evidence of the fruits of that search." *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006).

Defendant also speculates that the signatures on all of the warrants are fraudulent. Presumably, he is suggesting that these signatures were forged. "[F]orgery is a very serious allegation, particularly as it suggests misconduct by government agents." *United States v. Williams*, No.1:17-CR-117, 2018 WL 4856536, at *9 (S.D. Ohio Oct. 5, 2018) (citation omitted). These warrants cannot be invalidated on mere conjecture alone. Without more, this argument also fails.

### 2. Defendant's Fourth Amendment rights were not violated.

There are three remaining issues relative to the searches and surveillance at the Vienna Woods Apartment. Defendant strikes out on all three.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A search under the Fourth Amendment has "undoubtedly occurred" when law

10

enforcement obtains information through physical intrusion into one's home. *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (internal quotation mark and citations omitted). But the protection afforded by the Fourth Amendment is not limited to the home itself. Indeed, "[t]he curtilage—the area 'immediately surrounding and associated with the home'—is treated as 'part of [the] home itself for Fourth Amendment purposes.'" *Morgan v. Fairfield Cty.*, 903 F.3d 553, 561 (6th Cir. 2018) (quoting *Oliver v. United States*, 446 U.S. 170, 180 (1984)). "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 212–13 (1986).

The search warrant for the Vienna Woods Apartment authorized law enforcement to search three specific vehicles "if located on or about the curtilage of the property where the place to be searched is located within." Doc. 35-2, PageID 174. Those vehicles included:

> 2013 Honda Civic bearing Ohio temporary license plate number N988572 and/or VIN# 2HGFG3B50DH509606
>
> 2014 Dodge Caravan bearing Ohio temporary license plate number M365727 and/or VIN# 2C4RDGCG5ER244692
>
> 2017 Chevrolet Malibu bearing Ohio license plate number JCF1003 and/or VIN# 1G1ZE5ST1HF291185

*Id*. Defendant contends that the Honda Civic was not located on or about the curtilage when the vehicle was searched during execution of the warrant and that the search of that vehicle violated his Fourth Amendment rights. This Court disagrees.

To be certain, the parking lot of the Vienna Woods apartment complex is not within the curtilage of Defendant's apartment unit. There are four factors relevant to "determining whether an individual has a reasonable expectation of privacy in an area, placing it within the home's curtilage: (1) proximity to the home; (2) whether the area is within an enclosure

11

around the home; (3) uses of the area; and (4) steps taken to protect the area from observation by passersby." *Coleman*, 923 F.3d at 455 (citing *United States v. Dunn*, 480 U.S. 294, 301 (1987)). The same fact-intensive and case-by-case analysis applies in the context of an apartment or condominium. *Id.*

The area at issue here is the apartment complex parking lot that is adjacent to the apartment building. Gov. Ex. 4. There is a wall or privacy fence surrounding that parking lot. Doc. 56, 20:25–21:5; Doc. 26, PageID 112. Defendant indicates in his motion that, although the privacy fence hides the complex from public view, the "gates remain open giving access to any public vehicle wishing to enter" and the "complex gives access to the public during all hours." Doc. 26, PageID 112. These facts all indicate that the Vienna Woods apartment parking lot was not curtilage, and Defendant had no reasonable expectation of privacy there. *See United States v. May-Shaw*, 955 F.3d 563, 571 (6th Cir. 2020) (holding that a carport located in an apartment complex's common parking lot was not curtilage); *Coleman*, 923 F.3d at 455 (holding that a shared condominium driveway not curtilage). It then follows that the Honda Civic was not located within the curtilage at the time it was searched. Gov. Ex. 4.

Defendant's assertion that the Honda Civic had been illegally searched because it was not located in the curtilage of his apartment is of no real consequence to the outcome of the Fourth Amendment analysis. Here, the warrant explicitly provided that the officers could search the Honda Civic if it was located "on or about" the curtilage of the Vienna Woods Apartment. A reasonable interpretation of this phrase would mean that officers could search the vehicles in question if they were located in close proximity to, or near, the curtilage itself. At the time of the search, the Honda Civic was parked immediately in front of Defendant's apartment building at 3100 Vienna Woods Drive. Gov. Ex. 4. The fact that the Honda Civic

12

was not searched immediately within the so-called curtilage of his apartment did not violate Defendant's Fourth Amendment rights.

Even assuming, however, that this Court's interpretation of the scope of the warrant is incorrect, that does not change the result. The search was still valid under two exceptions to the warrant requirement. First, the automobile exception, allows law enforcement to "conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). Here, again, there was probable cause that the Honda Civic contained evidence of Defendant's alleged drug activity based on police surveillance and evidence of controlled buys.

Although it is unclear whether Defendant was ever observed operating the vehicle, officers knew that the Honda Civic was registered to Defendant's spouse, and based on their surveillance, they considered it to be Defendant's primary vehicle. Hearing Tr., Doc. 56, 22:11–12. Apartment management also confirmed Defendant's connection to vehicle. Doc. 35-2, PageID 177. Surveillance showed that the cellular device Defendant used and the GPS tracker on the Honda Civic would always move together. Hearing Tr., Doc. 56, 24:14–25:4. This is notable because on at least two occasions investigators tracked the Honda Civic from the Vienna Woods Apartment to the location of controlled buys, and then back to the apartment. *Id.* at 25:17– 29:15. During one of those buys, Officer Connley observed the brief exchange between Defendant and the confidential informant. *Id.* at 29:3–13. These controlled buys were in addition to other presumed drug transactions where Officer Connley observed several subjects quickly enter and exit the Honda Civic. Doc. 35-2, PageID 177.

The good faith exception would also render the search valid. *Leon*, 468 U.S. at 922–23. The affidavit for the Vienna Woods Apartment established an independent basis for probable cause to search the Honda Civic. And, as described above, the language in the warrant could reasonably be interpreted as meaning that officers were permitted to search the Honda Civic while it was located in the apartment complex parking lot. The officers' good-faith reliance on the warrant to search the Honda Civic was objectively reasonable.

This brings us to whether installation of the GPS tracker on the Honda Civic violated the Fourth Amendment. The short answer is no. Although installation of a GPS tracker qualifies as a search under the Fourth Amendment, *United States v. Jones*, 565 U.S. 400, 404 (2012), investigators had obtained a warrant to install that device. Doc. 56, 24:24–25:4. The question then becomes whether there was an intrusion onto the curtilage of Defendant's apartment when installing the tracker. Although it is unclear from the record where the Honda Civic was located when that device was installed, Defendant's pleadings suggest that it was parked in the parking lot at the Vienna Woods Apartment—presumably near where the Honda Civic was located during the search, *see* Gov. Ex. 4. For the same reasons discussed above, the parking lot at that complex is not the curtilage of Defendant's apartment. Thus, installation of the tracker did not violate Defendant's rights under the Fourth Amendment. *Coleman*, 923 F.3d at 457.

The same can be said for police surveillance conducted at the Vienna Woods and Gobel apartments Defendant complains of as implicating his Fourth Amendment rights. At both locations, Officer Connley surveilled the exterior of those buildings from the public street or the apartment complex parking lot. Doc. 56, 13:23–14:8; 21:3–7; 46:16–47:17; 80:3–15; 89:1–5; Def. Ex. 1. It has long been the case that this sort of police work does not offend the

Fourth Amendment. *United States v. Houston*, 813 F.3d 282, 288 (6th Cir. 2016) ("[T]he Fourth Amendment does not 'preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.'") (quoting *Ciraolo*, 476 U.S. at 213).

Defendant is therefore not entitled to suppression of evidence.

### III. CONCLUSION

Defendant is not entitled to a *Franks* hearing, nor to suppression of evidence seized during the execution of the warrants. Accordingly, Defendant's motion to suppress (Doc. 26) and renewed motion for a *Franks* hearing (Doc. 54) are therefore **DENIED**.

**IT IS SO ORDERED.**

May 24, 2024

Jeffery P. Hopkins
United States District Judge