# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**UNITED STATES OF AMERICA,**[*]

        **Plaintiff,**

                                  **Case No. 1:23-cr-47**

     **v.**

                                  **JUDGE DOUGLAS R. COLE**

**RODERICK MOORE,**

        **Defendant.**

### OMNIBUS ORDER

On April 26, 2023, Defendant Roderick Moore was indicted in this matter for two counts of possession with intent to distribute and attempted distribution of controlled substances, two counts of possessing a firearm in furtherance of drug trafficking offenses, and two counts of possession of a firearm by a prohibited person, all arising from actions he allegedly took in March and May 2022. (Indictment, Doc. 1). Trial is set to begin on July 29, 2024. Before the Court are a myriad of motions Moore has filed in advance of trial, which are ripe for resolution. Nearly all these motions are legally or factually frivolous or moot. The Court addresses them wholesale in this Omnibus Order. The Court also finds that several motions involve

---

[*] While the Court ultimately denies nearly all Moore's motions, it takes a moment to address the government's tone in responding (or in some cases failing to respond) to Moore's arguments. The Court acknowledges that several of Moore's filings are difficult to follow, but not all entirely miss their marks, and the government's sometimes unnecessarily charged language and characterizations of Moore's arguments in its responsive briefing do not help. In fact, in at least some instances, the nature of the government's responses has made it more difficult for the Court to ascertain the merit of Moore's objections or requests for discoverable materials. The Court understands the government's frustrations in dealing with the often duplicative, and many times wholly meritless, filings Moore has tendered in this case. But the Court nonetheless expects all parties to remain respectful, even when one party is representing himself pro se and is not as familiar with the litigation process.

evidentiary issues that the Court cannot resolve in the abstract, which requires the Court to defer ruling on those matters until evidence is proffered at trial.

A.    **Sovereign Citizen Arguments (Docs. 85, 105, 107, 118, 132, 168, 200, 206, 213, 217, 225, and 258-1) and Arguments About the Related State Court Prosecution (Docs. 19, 182, 183, 184, 222, and 223)**

Moore has filed several motions that either wholly or partially challenge the Court's subject-matter jurisdiction over his criminal case. A couple presume that this case was improperly removed from state court and therefore cannot proceed in federal court. (Doc. 213, #1223–24; Doc. 217, #1245–46). But that argument conflates this federal criminal matter with the distinct *state* criminal prosecution for related behavior that Moore previously sought to remove in an improper attempt to convert it into a federal civil cause of action. *See Ohio v. Bey*, No. 1:22-cv-660, 2023 WL 317512, at *1 (S.D. Ohio Jan. 19, 2023). As has been true since the founding times, our nation is one of dual sovereigns (the states, on one hand, and the federal government, on the other). And each may initiate its own criminal prosecutions for the same conduct when a person's actions constitute offenses under the laws of both jurisdictions. *Gamble v. United States*, 587 U.S. 678, 685–88 (2019). As a result, a dismissal of a state court complaint based on similar charges does not foreclose this Court's exercising jurisdiction over a valid federal indictment.[1] *United States v. Kendrick*, 853 F.2d 492, 495–96 (6th Cir. 1988).

---

[1] Some of Moore's other motions make this same error in arguing that this case was somehow removed from the state court and that the filing of criminal complaints under state law in state court somehow works a defect in the federal indictment. (Doc. 183, #1048–51; Doc. 184, #1064–65). Again, given our dual-sovereign federal structure of government, these arguments lack merit. *United States v. Lopez*, 915 F. Supp. 891, 896–97 (E.D. Mich. 1996).

And the Court has valid subject-matter jurisdiction over this indictment under

18 U.S.C. § 3231: all counts allege that Moore violated federal law, (Doc. 1, #1–3

---

So the Court **DENIES** Moore's motions seeking to resolve this case by reference to the purported effect state proceedings have on this federal cause (Docs. 183, 184). Relatedly, Moore's misunderstanding as to the fact that there were two criminal proceedings prosecuted by different sovereigns leads him to file four other meritless motions.

First, Moore moved to have property seized by state agents returned to him based on his contention that the seizure was beyond the state's lawful authority. (Doc. 19, #61–62). The Court construes this as a motion under Federal Rule of Criminal Procedure 41(g)—the mechanism for returning property seized during criminal proceedings to a criminal defendant. Even so, Moore mistakes the federal court's authority in a federal criminal proceeding to compel state officers to return property. Courts have consistently held that Rule 41 applies only to federal actions in criminal investigations and proceedings. *United States v. Bennett*, 170 F.3d 632, 636 n.1 (6th Cir. 1999). And without any demonstration from Moore that federal authorities hold the property he seeks, the Court cannot grant him the relief he requests. *See United States v. Obi*, 100 F. App'x 498, 499 (6th Cir. 2004). So the Court **DENIES** Moore's Motion to Return Property (Doc. 19).

Second, his conflation of the two sovereigns leads him to claim that the fact that the federal indictment was brought a year after state charges were filed violated his due process and speedy trial rights. (Doc. 222, #1282–89). But such a delay on its own does not cause the constitutional harms Moore claims. *United States v. Marion*, 404 U.S. 307, 320–25 (1971). Speedy trial rights do not attach in federal court until federal authorities file the formal accusation for the offense in question via a federal indictment, information, or arrest. *United States v. Crawford*, 489 F. App'x 866, 867–68 (6th Cir. 2012). And the mere speculation that the government's delay in obtaining a federal indictment might cause prejudice does not suffice on its own to establish that the pre-indictment delay constitutes a due process violation. *Marion*, 404 U.S. at 325–26. So the Court **DENIES** Moore's Demand to Dismiss due to Violation of Amendment V, VI (Doc. 222).

Third, because Moore conflates the two sovereigns, that leads him to speculate that the current proceeding constitutes an improper selective prosecution. (Doc. 223, #1291–94). But concurrent prosecutions often occur in this dual-sovereign federal system. Here, the separate sovereigns each have made charging decisions for the same conduct. That alone does not work a constitutional violation. *Lopez*, 915 F. Supp. at 898–99. And mere speculation about nefarious intent will not suffice to persuade the Court that this case results from impermissible selective prosecution in violation of Moore's due process rights. The Court therefore **DENIES** his "Demand to Dismiss due to Selective Prosecution Pursuant Crim. Rule 12(1)(3)(iv)" (Doc. 223).

Fourth, Moore moves for a transcription of an evidentiary hearing allegedly held pursuant to 28 U.S.C. § 1455(b)(5). (Doc. 182, #1045). But § 1455(b)(5) applies only to removed criminal proceedings. Moore again errs in believing that this federal case was removed from state court. As this case was filed in this Court upon a federal indictment by a federal grand jury, (Doc. 1), there was no § 1455 hearing. The Court therefore **DENIES** Moore's "Demand to Produce Transcribed Evidentiary Hearing Pursuant to 28 U.S.C. §1455 (b)(5)" (Doc. 182).

3

(citing criminal laws found in Title 18 of the United States Code and the Controlled Substances Act, 21 U.S.C. § 841)), and "this Court is properly constituted by an act of Congress and therefore has the authority to enter binding judgments in disputes properly before it," *Dates v. Buchanan*, No. 1:23-cv-449, 2024 U.S. Dist. LEXIS 30485, at *8 (S.D. Ohio Feb. 22, 2024) (citing 28 U.S.C. § 115(b)). Moore's arguments to the contrary "directly correspond to meritless rhetoric frequently espoused by tax protesters, sovereign citizens, and self-proclaimed Moorish-Americans." *United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017) (collecting cases). So, like every other court to confront such frivolous arguments, the Court rejects them as lacking a basis in law.[2] The Court therefore **DENIES** Moore's several various styled motions seeking to have his indictment dismissed based on a lack of subject matter jurisdiction. (Docs. 105, 107, 118, 132, 168, 213, 217, 258-1).

## B. Alleged Judicial Misconduct (Docs. 64, 65, 75, 81, 88, 92, and 255-1).

A slew of motions claim that the prior judge engaged in judicial misconduct and violated his oath in ruling against Moore, which Moore believes necessitates a dismissal of his indictment. But most of Moore's arguments are based on isolated statements made in the several hearings and decisions the then-assigned judge issued. Isolated comments by judges—including those that are "disapproving of, or

---

[2] Several other motions (some not even requesting relief) espouse sovereign citizen rhetoric and arguments. (Doc. 85, #578–79 (filing claiming to be a money order that needs to be returned); Doc. 200, #1136 (requesting "securities" the government holds on Moore); Doc. 206, #1150 ("[d]emanding" that the government "settle" with Moore); Doc. 225, #1298–99 (arguing that the United States Attorney's Office is not part of the Executive Branch of the United States)). As these filings all lack any support in the law, *Coleman*, 871 F.3d at 476, the Court **DENIES** them (Docs. 85, 200, 206, 225).

even hostile to, counsel, the parties, or their cases[—]ordinarily do not support a bias or partiality challenge." *United States v. Rogers*, Nos. 1:08-cr-2, 1:18-cv-889, 1:18-cv-825, 2024 WL 2010935, at *9 (S.D. Ohio May 7, 2024) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Instead, Moore must point to an extrajudicial source of bias. *Id.* He cannot merely rely on his disagreement with the judge's legal rulings and that judge's rejection of his arguments. *Liteky*, 510 U.S. at 555. Moore is of course free to claim error. But the recourse for any alleged legal error in the prior rulings of this Court is by way of an appeal of a final judgment after trial—not a dismissal of the indictment based solely on speculation as to judicial misconduct. *See Prince v. Cha*, No. 2:13-cv-35, 2015 WL 5163049, at *4 (S.D. Ohio Sept. 3, 2015). The Court therefore **DENIES** Moore's motions stemming from his unfounded claims of judicial misconduct (Docs. 64, 65, 75, 81, 88, 92, 255-1).

## C. Motions That Have Been Mooted (Docs. 29, 126, 128, 145, 155, 169, 174, 185, 186, 192, 199, 202, 205, 219, 228, 229, 237, 238, 240, 241, 257, 263, 271, 273, 274, and 278)

Many of the motions Moore has filed are also moot due to either Moore's own acknowledgment or later filings listed on the docket.

Moore filed a motion requesting a transcript be delivered to him at the government's expense in December 2023. (Doc. 126). He filed a nearly identical motion in one of the several Sixth Circuit appeals he has filed. Motion for Transcript at Government's Expense. *Compare* (*id.*) *with United States v. Moore*, No. 23-3759 (6th Cir. Dec. 18, 2023), ECF No. 10. And the Sixth Circuit granted that motion.

Order, *Moore*, No. 23-3759 (6th Cir. Mar. 13, 2024), ECF No. 36. So the Court **DENIES AS MOOT** the Motion for Transcript at Government's Expense (Doc. 126).

Moore also filed two documents seeking to stay the district court proceedings pending appeal and to prevent his transfer for psychiatric evaluation: one he labeled a "Writ of Supersedeas Order to Show Cause" (Doc. 128), and the other a "Writ of Coram Non Judice/Coram Vobis" (Doc. 145). When presented with a similar motion to stay the transfer, the Sixth Circuit denied his request to stay the case pending appeal. (Doc. 152, #898). Plus, the psychiatric evaluation has already been completed (and the competency hearing held) such that any attempt to prevent the transfer and to stay proceedings is now moot. (Doc. 198; 5/3/24 Min. Entry). So the Court **DENIES AS MOOT** the "Writ of Supersedeas Order to Show Cause" (Doc. 128) and the "Writ of Coram Non Judice/Coram Vobis" (Doc. 145).

Relatedly, Moore's two motions directed at obtaining the report resulting from his psychiatric evaluation are also moot. (Docs. 186, 205). At the May 3, 2024, competency hearing, Moore acknowledged that he had in fact received a copy of the psychologist's report regarding Moore's competency, (Doc. 198).[3] (5/3/24 Min. Entry). So the Court **DENIES AS MOOT** his Demand for Production of Test and Examinations Pursuant to Crim. Rule 16(E) (Doc. 186), and Demand for Production of Report Pursuant to Crim. Rule 16(E) & 18 U.S.C. 4247(c) (Doc. 205).

---

[3] Moore also filed a motion requesting two other docket entries filed under seal. (Doc. 174, #1008). The Court notes that all court entries on the docket have been mailed to Moore to ensure he may review all matter relating to his case. So the Court **DENIES AS MOOT** Moore's Demand from Sui Juris Defendant for Transcripts and Disclosure (Doc. 174). But the denial is without prejudice to Moore's refiling if he did not in fact receive the entries in question.

Moore filed a motion claiming he never received one of the government's briefs. (Doc. 199, #1134 (seeking Doc. 175)). Not only did the government serve the response brief on Moore by mail, (Doc. 175, #1015), but Moore eventually responded to it, (Doc. 234). The Court thus **DENIES AS MOOT** Moore's "Demand for Doc. #175." (Doc. 199).

Several other motions are also implicated by rulings connected with Moore's multiple attempts to appeal orders to the Sixth Circuit.

Moore filed a document labeled "Demand to produce Appearance Bond" on February 9, 2024. (Doc. 155, #911). Construing this document liberally based on its substance, *see McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012), the Court concludes that this is a motion for the Court to revoke his order of detention. But the Court denied this request previously, (Doc. 135, #819), and Moore has not presented new evidence explaining why the Court should reopen the matter. *United States v. Parish*, No. 1:21-cr-127-14, 2022 WL 3654892, at *2 (S.D. Ohio Aug. 25, 2022). Furthermore, the Sixth Circuit has denied this request as well in one of Moore's several appeals. (Doc. 214, #1229). So given Moore has provided no reason for the Court to revisit the matter a third time (or to re-evaluate the Sixth Circuit's decision to affirm this Court's order of detention), the Court therefore **DENIES** Moore's Demand to Produce Appearance Bond (Doc. 155).[4]

---

[4] Because Moore's renewed motion for bond failed to put forward new evidence in support of his request for relief, the Court is denying the motion on the merits. Nonetheless, the Court opted to include that denial in this section of the Omnibus Order dealing with "moot" motions. That is because the dearth of new evidence means Moore's motion seeks bond based on the same record that was before the Sixth Circuit in his interlocutory appeal. And the Sixth

Moore filed a motion seeking for the Court to order the government to produce all transcribed warrant applications related to this cause. (Doc. 185, #1077). The Court discussed with the parties Moore's request for the warrants in this case at the June 21, 2024, status conference. The government informed the Court that it believed Moore was requesting warrants related to the installation of a GPS tracking device and that it would turn over the relevant warrants to the extent they had not done so already. Moore appears to have received these warrants. (Doc. 279, #1512–19). So the Court **DENIES AS MOOT** Moore's "Demand for Production of Transcribed Warrant Applications Pursuant to Fed. Crim. Rule 41(C)(2)(d)" (Doc. 185).[5]

Moore moved in March to proceed in forma pauperis (IFP). (Doc. 192, #1100–1101). But in response to a previous request connected to Moore's first appeal here, the Court granted his IFP motion. (Doc. 138, #829). Under Federal Rule of Appellate Procedure 24(a)(3), once IFP status is granted, it continues until the district court enters an order either revoking it or certifying that an appeal would not be taken in good faith. No such order has been entered, so Moore retains his IFP status. So the Court **DENIES AS MOOT** his Motion to Proceed In Forma Pauperis (Doc. 192).

Moore had initially filed two requests for *Daubert* hearings related to the DNA and drug testing evidence the government intended to proffer at trial. (Doc. 202, #1140; Doc. 219, #1256–57). At the in-person status conference the Court held with

---

Circuit's ruling on that request based on the same record binds this Court under rule of the mandate. So the Court's denial of this motion on the merits is the functional equivalent of finding the motion moot.

[5] But as was the case with Moore's other discovery requests, *see supra* note 3, this denial is without prejudice to his refiling if he did not in fact receive the discovery in question.

the parties, though, Moore notified the Court that he was withdrawing his two *Daubert* motions. (6/21/24 Min. Entry). Based on his statement, the Court **DENIES AS MOOT** both of Moore's *Daubert* motions (Docs. 202, 219).

Moore filed a document he entitles a "Writ of Error Coram Nobis," in which he challenges the prior judge's handling of the competency hearing and the judge's purported failure to inform Moore of his rights at the hearing. (Doc. 228, #1305–06). Not only does this document not appear to request relief, but he filed this exact document with the Sixth Circuit seeking a writ of mandamus in one of the several appellate proceedings in this matter. *Compare* (*id.*) *with* Writ of Error Coram Nobis, *In re Roderick Moore*, No. 24-3415 (6th Cir. May 14, 2024), ECF No. 1-2. These details, combined with the fact that Moore's challenges to the competency orders and related proceedings are still on appeal, (Docs. 67 (appealing the prior judge's order for psychological evaluation under 18 U.S.C. §§ 4241, 4247), 72 (same), 166 (similar), 167 (similar)), means this Court lacks jurisdiction to evaluate matters wrapped up in the competency hearing. *United States v. Davis*, 93 F.3d 1286, 1288–89 (6th Cir. 1996) (concluding that commitment orders under 18 U.S.C. § 4241 are validly reviewed on appeal as collateral orders); *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").[6] As this is properly before the

---

[6] While a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal," *Griggs*, 459 U.S. at 58, the Sixth Circuit has recognized that when the order appealed is collateral to the merits of the case—as is the case with

Sixth Circuit, not this Court, the Court **DENIES AS MOOT** Moore's Writ of Error Coram Nobis (Doc. 228).

And finally, some of the motions that are moot are related to Moore's various discovery requests.

Moore has filed three motions requesting that the Court order the government to ensure he and stand-by counsel can review the physical evidence. (Doc. 229, #1308; Doc. 257, #1420; Doc. 274, #1477–78). Because these are duplicate requests, the Court **DENIES AS MOOT** the first two motions (Docs. 229, 257). As to the third, the government assured the Court at the June 21, 2024, status conference that it had scheduled a meeting with Moore for June 24, 2024, at which meeting it would show Moore the physical evidence. Moore's most recent filings suggest this meeting did in fact take place. (Doc. 281, #1526). So the Court also **DENIES AS MOOT** Moore's "3rd Motion to View All Gov's [sic] Physical Evidence in Lieu of Trial" (Doc. 274).

Moore also filed five motions, invoking the Ohio Public Records Act and the Freedom of Information Act, related to materials he would like to obtain from various state and federal authorities. (Doc. 237, #1338; Doc. 241, #1353; Doc. 263, #1441; Doc. 273, #1474–75; Doc. 278, #1503). At the June 21, 2024, status conference, Moore informed the Court that he had filed these documents to create a record of having made the requests. And he made clear to the Court that he had also sent these

---

commitment orders, *Davis*, 93 F.3d at 1288–89—the interlocutory appeal does not bar the Court from exercising jurisdiction over and adjudicating the remainder of the case. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995). Hence, the Court concludes it may proceed to evaluate the other matters in this case notwithstanding the three pending Sixth Circuit proceedings related to the competency issues raised in this case.

requests directly to the requisite state and federal authorities according to the procedures required by the applicable statutes and was awaiting their responses. As a result, the Court understands Moore not to be seeking relief from this Court, which renders the motions moot. So it **DENIES AS MOOT** his Ohio Public Records Act and Freedom of Information Act motions (Docs. 237, 241, 263, 273, 278).

Moore has filed several motions requesting that the government disclose discovery, *Brady*, and *Giglio* materials in his case. (Doc. 29, #133–34 (requesting discovery generally); Doc. 169, #979 (requesting *Brady* materials); Doc. 238, #1340 (citing the Freedom of Information Act but requesting exculpatory evidence, which is in effect a request for *Brady* materials); Doc. 240, #1349–51 (requesting material described in *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991),[7] which is impeaching evidence the government possesses regarding its witnesses and therefore is best classified as *Giglio v. United States* material, 405 U.S. 150, 154 (1972))). As discovery (to which Moore has responded in subsequent motions) has been ongoing, the general motion demanding disclosure is now moot. So the Court **DENIES AS MOOT** Moore's Motion for Order Compelling Disclosure or Discovery (Doc. 29).

---

[7] Moore objects to the government's construing this motion as a request for *Giglio* material because he insists that he is asking for what he calls *Henthorn* material. (Doc. 283, #1533). But the problem for Moore in demanding that this Court apply *Henthorn* on its terms is that the Sixth Circuit rejected this holding in *United States v. Driscoll*. 970 F.2d 1472, 1482, 1489 (6th Cir. 1992) (affirming a district court's refusal to order the prosecution to turn over an FBI agent's personnel file under *Brady* over a dissenting judge's contention that such evidence was material to the defendant's case and was on all fours with *Henthorn*), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695, 702 (6th Cir. 1999). For this reason, Moore is not entitled to any files under the rule set forth in *Henthorn*. But the Court agrees with the government that, construing his motion liberally (as Moore is proceeding pro se), the best understanding of his request is one for *Giglio* material.

Similarly, Moore's two motions relating to disclosure of all *Brady* material do not provide any specificity regarding the evidence he believes has not yet been turned over to him that he requires to prepare his defense. The motions only generally request that the government comply with its *Brady* obligations. (*See* Doc. 169, #979; Doc. 238, #1340). The government has made clear that it is aware of its *Brady* obligations and will produce such evidence in a timely fashion, (Doc. 175, #1013)—a point the government reiterated at the status conference the Court held with the parties on June 21, 2024, (*see* 6/21/24 Min. Entry). In addition, the government represented to the Court at the hearing that it has thus far disclosed what it believes are all the *Brady* materials in its possession. So, the Court **DENIES AS MOOT** Moore's two motions generally asking for *Brady* materials (Docs. 169, 238) as well as Moore's motion requesting *Giglio* material (Doc. 240).[8]

Moore also filed a motion requesting the Court order the government to produce the chain of custody regarding the evidence (likely with special focus on the chain of custody over the drugs seized at the two locations in question in this case) that the government intends to introduce at trial. (Doc. 271, #1469). The Court, inclined to agree that Moore is entitled to such records, discussed this motion with the government at the June 21, 2024, status conference. The government, despite some initial resistance, agreed that it would be able to put forward a record of the

---

[8] That said, to the extent that Moore has reason to believe the government has failed to disclose certain evidence it intends to proffer, he may file a motion identifying *with particularity* the materials in question so that the Court may review that specific claim. But as things stand, the general disclosure and *Brady* motions referenced above do not entitle Moore to relief because a generalized demand for discovery materials does not permit the Court meaningfully to assess the merits of any such motions.

chain of custody for the defendant and would produce such records in advance of trial. As a result, acting on the government's representations at the June 21, 2024, status conference, the Court **DENIES AS MOOT** Moore's Ex Parte Motion for Issuance of Subpoena for Official Records (Doc. 271). That said, should the Court learn that the government has been dilatory in turning over these records, the Court will act on a duly filed motion at that time.

### D. Decided in the Prior Judge's Ruling on Suppression and *Franks* (Docs. 27, 36, 54, 66, 119, 125, 131, 217, 259, 264, 268, 270, and 272)[9]

Moore has filed several motions raising various *Franks*- and suppression-related issues. One asks for a *Franks* hearing. (Doc. 54, #271–78). Two challenge the validity of the search warrants based on claims that the state officer affiant who sought the warrants committed perjury during his testimony at the suppression hearing. (Doc. 66, #483–85; Doc. 217, #1246–47). Two challenge the validity of the search warrants executed against him based on purportedly forged signatures. (Doc. 119, #729–31; Doc. 131, #799–800). Two rely on these arguments about the validity of the search warrants and contend that because Moore believes he has proven that the government is relying on false evidence, the Court should dismiss this criminal

---

[9] At the June 21, 2024, status conference, the Court notified Moore that it intended to deny all his motions attempting to relitigate matters resolved by the previously assigned judge in his Opinion and Order denying Moore's motion to suppress and his renewed request for a *Franks* hearing. The Court explained that if Moore wished to have the undersigned revisit that ruling, he would need to identify new evidence not presented to the prior judge to support such a motion. In light of this statement, Moore has filed a motion for reconsideration purporting to base this request on newly discovered evidence. (Doc. 279, #1505–11). Because that motion supposedly relies on new evidence, the Court believes it is proper to address the motion in a separate order once the government has an opportunity to respond. As a result, the Court disposes of only those motions connected to suppression and *Franks* issues that simply repeat arguments Moore previously raised and the prior judge already adjudicated.

action. (Doc. 125, #765–66; Doc. 259, #1425–26). And another asks the Court to hold a "LUNA" hearing based on a Sixth Circuit case that has since been overruled. (Doc. 268, #1456–60 (citing *United States v. Luna*, 525 F.2d 4 (6th Cir. 1975), *abrogated by Franks v. Delaware*, 438 U.S. 154 (1978))). But the previously assigned judge expressly resolved the evidentiary and legal issues with respect to the search warrants and whether the evidence obtained from such searches may be admitted into evidence without flouting the Fourth Amendment.[10] (Doc. 249, #1384–98). In other words, all these matters have been adjudicated on account of that ruling.

---

[10] Moore also moved for the Court to disclose the identity of the confidential informant who had tipped Cincinnati police off to the alleged drug trafficking operations of which Moore is accused. (Doc. 27, #116–18). Moore's justification for this request is based on his belief that there are inconsistencies in the search warrants executed at two locations associated with him. (*Id.* at #117–18). And he requested the name of the informant to discredit the validity of the searches used to obtain the evidence against him. (*Id.* at #118). As is explained in the prior judge's ruling on Moore's motion to suppress, while the confidential informant participated in some controlled buys, the evidence against Moore was obtained by officers who observed Moore's conduct and other information the police collected independent of the informant. (Doc. 249, #1390–98 (discussing police surveillance, interviews with individuals other than the confidential informant, observations of controlled buys, and related digital data)). As a result, the informant, at best, played only an incidental role in the investigation, which means disclosure of the informant's identity would not be justified. *United States v. Doxey*, 833 F.3d 692, 707–08 (6th Cir. 2016). This is especially the case given the government represents that it will not proffer the confidential informant or use the informant's statements as evidence at trial. (Doc. 35, #160). Moore therefore will not be prejudiced by the denial of his motion, as he does not need the identity of the informant to present a defense to the government's evidence. *Cf. United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) (explaining that statements from a confidential informant used to explain the reasons the police began to investigate the defendant did not violate the defendant's Confrontation Clause rights, as they were not testimonial evidence). The Court therefore **DENIES** Moore's "Motion to disclose identity of confidential informant" (Doc. 27). Furthermore, because some of the controlled buys are based on observations by police and independently collected evidence, the Court will **DENY IN PART** Moore's motion to exclude this evidence completely from the government's case-in-chief. (Doc. 36, #179–80 (claiming that only hearsay of a non-testifying witness can provide a foundation for such evidence)). That said, the Court's denial is **WITHOUT PREJUDICE** to Moore's reraising the issue at trial. Namely, there are clear Confrontation Clause and hearsay issues that could be implicated by the evidence related to the controlled buys the government proffers at trial. Such evidentiary questions will turn on

Sure, Moore has filed two other motions expressly seeking reconsideration of the prior judge's decision to deny Moore's motion to suppress evidence and his request for a *Franks* hearing. (Docs. 264, 270, 272[11]). But these motions raise the same arguments aired in his previous motions and at the suppression hearings. And the Court concludes that this attempt to relitigate issues already resolved without identifying a new basis (in fact or in law) for evaluating those questions means these motions fail under law of the case. *United States v. Madison*, No. 02-cr-20448, 2004 WL 5257959, at *2–*3 (W.D. Tenn. Jan. 28, 2004). Moore can raise any challenges he has to these rulings through an appeal after the entry of a final judgment following trial. The Court therefore **DENIES** Moore's several motions (Docs. 54, 66, 119, 125, 131, 217, 259, 264, 268, 270, 272), relating to matters resolved by the prior assigned judge in his Opinion and Order denying the motion to suppress evidence and Moore's request for a *Franks* hearing, (Doc. 249).[12]

---

exactly what is proffered and the purpose for which the government seeks its admission. *Cromer*, 389 F.3d at 676–79.

[11] Though Moore labels the document filed on June 12, 2024, as a "Motion for Judicial Notice pursuant to Fed. R. Evid. 201," he argues that there is no "good faith exception" to the Fourth Amendment. (Doc. 272, #1471–72). As this exception applies to the scope of the exclusionary rule in the Fourth Amendment caselaw applicable to Moore's motions to suppress, *United States v. Leon*, 468 U.S. 897 (1984), the Court construes this filing as another motion seeking reconsideration of the denial of suppression.

[12] Admittedly, Moore has attempted to appeal these issues. (Doc. 261, #1431). While the docketing of such a notice normally prevents this Court from exercising jurisdiction over matters inherently intertwined with the order being appealed, there is an exception when the party attempts to appeal a "patently non-appealable order." *United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984). And "[i]t is well-settled that a criminal defendant cannot take an immediate appeal from an order denying a pretrial motion to suppress evidence." *United States v. Shameizadeh*, 41 F.3d 266, 267 (6th Cir. 1994). So despite this appeal, the Court may deny these outstanding motions on the merits as barred by law of the case.

**E.** *Bruen* **(Doc. 150)**

Moore has also challenged the constitutionality of the counts in his indictment brought under 18 U.S.C. § 922(g). He argues that under the Supreme Court's recent articulation in *New York State Pistol & Rifle Ass'n v. Bruen* of the proper two-step standard that governs Second Amendment challenges to statutory enactments, his indictment must be dismissed. (Doc. 150, #886–89). And in fairness to Moore, *Bruen* worked a sea change in Second Amendment jurisprudence. Among other things, it put the onus on the government to justify its regulation of conduct protected by the text of the Second Amendment by identifying a close historical analogue. 597 U.S. 1, 24 (2022); *United States v. Rahimi*, No. 22-915, 2024 WL 3074728, at *6 (U.S. June 21, 2024). The conduct for which Moore has been charged under § 922(g) is possession of a firearm (a point made self-evident by the fact that the provision is better known by its shorthand moniker: a charge for being a "felon in possession"). The plain text of the Second Amendment clearly addresses the topic of possessing firearms generally. Indeed, as the Supreme Court recognized in *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), gun ownership and possession of firearms fall within the heartland of the Second Amendment's protections of the "rights of the people to keep and bear Arms." And these rights are held by "the people"—a term affording the protections to *all* United States citizens, *United States v. Duarte*, 101 F.4th 657, 671– 76 (9th Cir. 2024), of which Moore is one (notwithstanding his sovereign citizens assertions suggesting the contrary, *see* Immigration and Nationality Act § 349, 8 U.S.C. § 1481).

16

So under *Bruen*, the onus is on the government to demonstrate that there is a historical tradition of enacting analogous (but not identical), *see Rahimi*, 2024 WL 3074728, at *6, *9, prohibitions on felons possessing firearms at the time of the founding, such that Congress can validly criminalize Moore's firearm possession merely based on his status as felon. *Bruen*, 597 U.S. at 24. The government does not meet this charge. Instead, it counters by citing pre-*Bruen* cases that held that felons do not constitute the "people" who hold the rights to "keep and [to] bear Arms" under the Second Amendment. (Doc. 160, #933–34 (relying on *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010), other pre-*Bruen* circuit court authority, and non-binding district court cases)). It advances this argument despite the overwhelming historical evidence that its proposed reading of the word "people" is unduly narrow both as a historical matter and as a textual matter in light of the fact that there is no modifier limiting the scope of the Amendment's protections to just specific categories of people. *Duarte*, 101 F.4th at 671–76. So it would seem the government has not met its burden under *Bruen*.[13]

---

[13] The government also pushes the misguided argument that *Bruen* itself determined that felons are not part of "the people" who hold Second Amendment rights. (Doc. 60, #932–33 (suggesting that *Bruen*'s holding cabined the scope of the Second Amendment such that it protects the rights of only the "lawful citizen")). It divines this holding from the fact that *Bruen* provided a factual description of the petitioners in that case, who were undisputedly law-abiding citizens. 597 U.S. at 15 ("As set forth in the pleadings below, petitioners Brandon Koch and Robert Nash are law-abiding, adult citizens."). Not so. That the Supreme Court identified, from the record before it, that the petitioners were law-abiding does not magically convert that description into a legally relevant fact. *Duarte*, 101 F.4th at 670 ("[W]e do not think that the Supreme Court, without any textual or historical analysis of the Second Amendment, intended to decide the constitutional fate of so large a population in so few words and with such little guidance."). And a fair reading of *Bruen* strongly counsels against this (mis)reading, given the Supreme Court's legal analysis focused specifically on establishing a uniform test for evaluating the scope of individuals' Second Amendment rights.

All that said, the Court finds itself unable to grant relief to Moore for his seemingly meritorious argument under *Bruen*. That is because, although the Sixth Circuit has not spoken in a published opinion on the constitutionality of § 922(g) after *Bruen*, it has made clear (twice over) that the (now dubious) holding in *Carey*—that laws regulating felons' possession of firearms are categorically constitutional, 602 F.3d at 741—still has legal force. *United States v. Vaughn*, No. 23-5790, 2023 WL 9789018, at *1 (6th Cir. Sept. 28, 2023); *In re Clark*, No. 22-1401, 2023 U.S. App. LEXIS 30481, at *3 (6th Cir. Nov. 15, 2023). Though unpublished, these decisions demonstrate that panels of the Sixth Circuit continue to hold that the constitutional viability of the government's dispossessing felons of firearms has been clearly settled by prior Sixth Circuit precedent and has not yet been upset by intervening Supreme Court decisions.[14] As a matter of vertical stare decisis, the Court finds itself bound by

---

*Id.* ("[T]he criminal histories of the plaintiffs in *Bruen* were not at issue in those cases." (cleaned up)). It did not evaluate the scope of term "the people," which was simply not a question presented. *See Rahimi*, 2024 WL 3074728, at *11 (rejecting the government's erroneous contention that *Heller* and *Bruen* had held that citizens who are not "responsible" do not hold Second Amendment rights). And this conclusion does not change just because two non-binding concurrences in *Bruen* reflecting a minority of justices *could* be read to suggest otherwise, (Doc. 160, #933 (citing the concurrences of Justices Alito and Kavanaugh in *Bruen*)). *United States v. Williams*, No. 23-cr-20201, 2024 WL 731932, at *6 n.9 (E.D. Mich. Feb. 22, 2024) (collecting cases uniformly applying the well-established rule that opinions of concurring and dissenting justices are not binding authority on any court). So as Judge Bea explained in a thoroughly reasoned opinion (that does more than just cursorily adopt past precedent without actually employing *Bruen*'s newly-minted history-and-tradition test, as other courts have done), the Second Amendment protects rights that are retained by "the people," not just an arbitrarily drawn subclass of citizens. *Duarte*, 101 F.4th at 671. For that reason, Moore can seek protection of those rights.

[14] Although the Supreme Court decided *Rahimi* after these Sixth Circuit decisions, the Court concludes that *Rahimi* cannot be read to have abrogated the Sixth Circuit's continued adherence to *Carey*'s uncertain holding. That is because *Rahimi*'s analysis focused on and clarified how to apply the test in *Bruen*—it put flesh on the bones of *Bruen*'s framework, rather than altered it. *See* 2024 WL 3074728, at *9–*10. So *Rahimi* does not shift the

the Sixth Circuit's unambiguous holding in *Carey* as a result. 602 F.3d at 741 ("Congress's prohibition on felon possession of firearms is constitutional"). So the Court **DENIES** Moore's "Demand to Strike Government[']s Charges of 922(g) from Indictment due to Constitutionality" (Doc. 150). But given the Court's doubt as to the continuing viability of the precedent it must apply and the Supreme Court's express recognition that it has yet to evaluate the contours of who "the people" who hold Second Amendment rights are, *Rahimi*, 2024 WL 3074728, at *11, Moore may want to pursue this issue with the Sixth Circuit through the appropriate appellate avenue. That court, and only that court, has the authority to revisit its own caselaw in light of the new standard set forth in *Bruen*.[15]

---

applicable legal landscape and the Sixth Circuit's judgment as to the viability of *Carey* after *Bruen* still carries force. And that means until the Sixth Circuit (or the Supreme Court) revisits the way in which *Bruen* changes its prior caselaw, the Court must apply the binding Sixth Circuit holding in *Carey*.

[15] The Court notes that Moore's past convictions—some of which could be categorized as violent felonies, (Doc. 9, #26)—might themselves ultimately prevent him from prevailing on his Second Amendment argument in the event the government presents a fully developed argument under *Bruen* (rather than simply relying on pre-*Bruen* caselaw). This is because firearm regulations at the founding might have distinguished between the rights of violent felons and the rights of non-violent felons—permitting disarmament of the former, but not the latter. *See Duarte*, 101 F.4th at 678–79, 688–90 (noting that historic disarmament laws were not sufficiently analogous to blanket ban on felons' ability to possess firearms, when their prior crimes were non-violent, because several significant historical examples were tied to "disarming a narrow segment of the populace who posed a risk of harm because their conduct was either violent or threatened future violence"); *cf. Rahimi*, 2024 WL 3074728, at *7–*9 (canvassing historical surety and "going armed" laws, concluding that they stand for the proposition that, at the founding, the government was authorized to disarm a threatening individual when he "pose[d] a clear threat of physical violence," and thereby holding that the disarmament of individuals subject to a domestic violence restraining order under 18 U.S.C. § 922(g)(8) passes constitutional muster); *but cf. id.* at *9 (highlighting as legally relevant that surety and going armed laws and § 922(g)(8) disarm individuals only upon a judicial determination that "the defendant 'represents a credible threat to the physical safety' of another"). Because the Court is bound by the holding in *Carey*, it does not wade into that morass—leaving the issue for the Sixth Circuit to sort out in the event it revisits its prior caselaw under *Bruen*.

**F.     Miscellaneous Motions Lacking Merit (Docs. 143, 153, 154, 156, 159, 161, 164, 181, 191, 227, 246, 248, 260, 267, 269, and 275)**

Finally, there are quite a few motions that are for various reasons without merit. The Court quickly deals with each based on the unique reasons applicable.

Moore filed a motion entitled "Writ of Error Coram Vobis," (Doc. 143, #839), in which he asks the Court to modify the default designation on the docket for attorneys associated with parties. The Court recognizes that Moore is representing himself, (5/3/24 Min. Entry), and that Mr. Monahan is only stand-by counsel, (Doc. 10, #29–30). The designation listing Mr. Monahan as the attorney to be noticed is simply a default entry in the Court's e-filing system to ensure Mr. Monahan is aware of all the relevant filings and proceedings. The notation therefore does not affect Moore's right to represent himself. The Court accordingly **DENIES** Moore's Writ of Error Coram Vobis (Doc. 143).

Moore filed two motions challenging the validity of the indictment under Federal Rule of Criminal Procedure 12. (Doc. 153, #900–05; Doc. 156, #914–18). In both, he claims the indictment is defective for two primary reasons: (1) fentanyl is not listed as a prohibited substance in § 401 of the Controlled Substances Act, 21 U.S.C. § 841(b)(1)(B), and (2) the evidence the government intends to offer at trial related to the gun charges do not amount to a violation of 18 U.S.C. § 924(c). (Doc. 153, #900–03; Doc. 156, #915–17).[16]

---

[16] Both motions also contain sovereign citizen rhetoric and suggestions that the indictment must fail because the Court lacks jurisdiction due to its remand of the improperly removed state cause. (Doc. 153, #900–01; Doc. 156, #914–15). For the reasons explained above, *see supra* Part A & notes 1–2, these arguments necessarily fail.

Start with the first. Although the Controlled Substances Act does not use the colloquial name, "fentanyl," to refer to the drug in question, it does in fact expressly refer to fentanyl (thereby outlawing its possession and distribution)—it just does so by its chemical name: N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide. 21 U.S.C. § 841(b)(1)(B)(iv); 28 C.F.R. § 50.21(d)(4)(vi) (explaining that this drug is "commonly known as fentanyl"). So there is nothing defective in the indictment when it charges Moore with possession and intent to distribute fentanyl under § 401 of the Controlled Substances Act, as the government will almost certainly be able to prove at trial that the chemical and colloquial names refer to the same substance. *United States v. Shamo*, 36 F.4th 1067, 1075 (10th Cir. 2022). And to the extent that Moore believes the government's evidence tending to prove that fentanyl is N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide lacks credibility—that is a trial-related objection that should not be tested under Rule 12. *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992). So the motions fail on this basis.

What about Moore's second argument relating to the alleged deficiency in the government's case as to the § 924(c) charges against him? For starters, Moore appears to focus on the lack of evidence the government has for his "use" or "carry" of the firearms in question during or in relation to the drug trafficking crimes for which he is charged. (Doc. 153, #901 (citing *Bailey v. United States*, 516 U.S. 137 (1995)); Doc. 156, #915 (same)). But Congress has not just outlawed the "use" or "carry" of a firearm in relation to a drug offense—§ 924(c)(1) also bans mere possession when it is in furtherance of such a crime. *Welch v. United States*, 578 U.S. 120, 133 (2016)

(describing this as the *Bailey* fix). And possession in furtherance of the drug trafficking offenses is exactly what the indictment charges here. (Doc. 1, #1–2). So that first aspect of Moore's challenges to the § 924 counts fail. The rest of Moore's arguments in these motions challenging the § 924 counts attack the reliability of the evidence the government intends to offer (characterizations the government disputes, (Doc. 160, #936–38)), not anything about the indictment itself. (*See* Doc. 153, #902 (arguing that his DNA was not on the firearms retrieved and that they were secured under lock and key); Doc. 156, #915–16 (same)). These are fine arguments to present to the jury, as to the extent they are valid they would significantly undermine the government's case. But the Court cannot use Rule 12 to invade the jury's provenance to make factual determinations in this matter. *Levin*, 973 F.2d at 467. So Moore's Rule 12 challenges to the § 924 counts must fail.[17]

---

[17] To the extent that Moore's motion attacks the sufficiency of the indictment itself, his motion fails. Yes, the indictment "must include such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Welborn*, No. 21-5425, 2022 WL 1276024, at *3 (6th Cir. Apr. 29, 2022) (cleaned up). But the indictment has done that here. It has identified the dates on which the alleged violations occurred, has pointed to all the elements of the crimes for which Moore will stand trial (tracking the language of the relevant statutes), and has identified the specific drugs (and amounts) and firearms that serve as the basis for each of the counts. (Doc. 1, #1–3). That more than suffices to give Moore adequate notice of the crimes charged to permit him to put on his defense. *Welborn*, 2022 WL 1276024, at *3–*4; *United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013) (explaining that criminal defendants are "not entitled at the time of his indictment to know all of the evidence the government would use to prove the charges against him"). As the Supreme Court has made clear, "it is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974). So even construing Moore's motions as challenging the sufficiency of the allegations in the indictment, the Court finds the motions must fail.

The Court therefore **DENIES** Moore's two motions challenging the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), (Docs. 153, 156).

Moore filed a motion seeking disclosure of Jencks Act material. (Doc. 154, #908). The government has made clear that it will comply with the Act and has already produced some material that may be produced according to its provisions. (Doc. 160, #938). Moreover, as the Jencks Act makes clear, covered materials technically need not be disclosed until after direct examination of the witness in question. 18 U.S.C. § 3500(a); *United States v. Fletcher*, 295 F. App'x 749, 753–54 (6th Cir. 2008) (noting that even *Brady* material that is covered by the Jencks Act is disclosed in accordance with the timeline set forth in the Act itself). So the Court **DENIES** Moore's Demand for Early Production of Jencks Material Pursuant to Rule 26.2 (Doc. 154). That said, the Court urges the government to produce Jencks material as far in advance of trial as it can, so as to avoid the need for any mid-trial continuance to allow Moore to review such material.

Moore filed two motions related to grand jury proceedings. The first requests that the government admit to using certain materials before the grand jurors. (Doc. 159, #927–28). The second requests production of all grand jury materials based on his presumption that such evidence will be exculpatory. (Doc. 164, #952–53). Both motions therefore demand release of grand jury materials without identification of a concrete basis for such material. Moore does not explain his first request, (Doc. 159, #927), and he speculates in the second that grand jury material may favor his defense, (Doc. 164, #952). Neither satisfies the heavy burden criminal defendants must meet

23

to show their particularized need for the grand jury materials. *United States v. Wahib*, 578 F. Supp. 3d 951, 956 (N.D. Ohio 2022); *accord United States v. Moxley*, No. 1:19-cr-98-15, 2020 WL 4381582, at *1–*2 (N.D. Ohio July 31, 2020). So the Court **DENIES** both of Moore's grand jury-related motions (Docs. 159, 164).

Moore filed two motions claiming his rights have been violated because the Court never provided proper due process disclosures. (Doc. 161, #242; Doc. 191, #1097–98). But that is belied by the record as a Due Process Protections Act Order was issued by Magistrate Judge Litkovitz the same day as Moore's initial appearance on the indictment. (Doc. 8). So the Court **DENIES** Moore's two motions denominated Notice to Court/Demand for Relief/Order to Show Cause (Docs. 161, 191).

Moore makes two requests for internal court materials regarding his criminal case. The first requests all communication regarding the case. (Doc. 181, #1042). The second requests all documentation related to the reassignment of this case to the undersigned. (Doc. 269, #1462 (citing the Freedom of Information Act)). The Court sees three problems with these motions. First, these documents and communications (to the extent that they exist) are not the kinds of "judicial records" to which the public right of access at common law or under the First Amendment attach. *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134–35 (2d Cir. 2017); *accord United States v. Casas*, 376 F.3d 20, 22–23 (1st Cir. 2004). Second, Moore cannot rely on the Freedom of Information Act to attempt to obtain that information because the statute does not apply to the judiciary. 5 U.S.C. § 551(1)(B). Third, and most importantly, the materials he requests are protected by the judicial deliberative privilege—a well-

24

entrenched and constitutionally protected privilege—that prevents disclosure of confidential communications judges rely on to carry out the performance of their judicial duties. *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994); *In re Certain Complains Under Investigation by an Investigating Comm. of the Jud. Conf. of the Eleventh Cir.*, 783 F.2d 1488, 1518–20 (11th Cir. 1986), *superseded by statute on other grounds as stated in In re McBryde*, 120 F.3d 519, 524 (5th Cir. 1997); *see generally Cain v. City of New Orleans*, No. 15-cv-4479, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016) (collecting cases); *Cf. Fayerweather v. Ritch*, 195 U.S. 276, 306–07 (1904) (explaining that a trial judge's testimony about his deliberative process behind an opinion and judgment entered in a prior case "was obviously incompetent" evidence and therefore inadmissible). So Moore has no entitlement to any of the requested internal documentation or communication (to the extent that they exist).[18] The Court therefore **DENIES** both of Moore's motions requesting confidential internal court communications and documentation (Docs. 181, 269). That said, the Court did explain to Moore at the recent in-person status conference that, as to the latter, the case was reassigned to the undersigned because of the crowded trial calendar of the previously assigned judge and the desire to accommodate Moore's wish to move forward with the already established trial date.

---

[18] The Court would deny Moore's request in this case even assuming (the doubtful proposition) that the judicial deliberative privilege is qualified. *Contra In re Certain Complaints*, 783 F.2d at 1521 (holding that the judicial deliberative privilege is qualified, not absolute). That is because Moore has not tried to explain why he needs these communications or documents and has therefore provided no basis for overcoming the privilege.

Separately, Moore seeks the suppression of a DNA swab taken after his arrest by state authorities. (Doc. 227). Not only was this cheek swab mandated by state law, Ohio Rev. Code § 2901.07(B)(1)(a), but because it was done as a routine part of Moore's arrest, it passes constitutional muster under clear Supreme Court precedent, *Maryland v. King*, 569 U.S. 435 (2013). *Wilson v. Collins*, 517 F.3d 421, 431 (6th Cir. 2008) (explaining the unanimous holding in caselaw that DNA samples "fall[] outside the scope of Fifth Amendment protection"). So the Court **DENIES** Moore's Motion to Suppress DNA Evidence (Doc. 227).

Moore also moves to exclude the testimony of the government's proffered drug analyst expert witness, who will testify regarding the results of the drug tests performed on the substances recovered during the investigation of this case. (Doc. 246, #1377). Moore objects to her testimony on the grounds that she is not the original analyst who tested these drugs. (*Id.*). The government acknowledges the shift in personnel, as its notice reports that the original examiners are no longer employed by the lab. (Doc. 209, #1158). But it explains that the proposed witness has tested the drugs herself and will testify based on her personal knowledge of the tests she performed and the results she obtained. (*Id.* at #1158–59). Moreover, the government explains that it will provide the proper foundation validating that the drugs tested are the same ones obtained during the investigation by proffering the chain of custody at trial. (Doc. 276, #1491). As presented, such expert evidence may validly be admitted at trial, so long as the proffered witness testifies only to *her* actions with respect to the evidence in question and does not rely on the prior analysts' work in

doing so. *See Smith v. Arizona*, No. 22-899, 2024 WL 3074423, at *7–*10 (U.S. June 21, 2024). And Moore's concerns about the chain of custody strike at the weight of the evidence, as opposed to its admissibility—something he is free to attack at trial. *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997). Together, the Court finds that there is no basis to exclude such testimony. So the Court **DENIES** Moore's "Motion in Limine to Exclude Examiners['] Testimony" (Doc. 246).[19]

Moore also moves to sever the first three counts of the indictment under Federal Rule of Criminal Procedure 14. (Doc. 248, #1381–82). According to Moore, the indictment charges conduct related to two incidents (counts one through three relate to the events occurring on March 26, 2022, and counts four through six relate to the events occurring on May 5, 2022, (Doc. 1, #1–3)) that are "vast[ly] differen[t]." (Doc. 248, #1381). This argument turns on his conclusory assertion that the events "differ in dates, modus operandi, drugs recovered, phone numbers, investigations, locations, [i]dentifications, and allegations." (*Id.*). Based on this assertion, Moore argues that were the events tried together, he would suffer substantial prejudice. (*Id.*). But his conclusory allegations of dissimilarity and unsupported claim of potential prejudice do not satisfy Moore's burden of making "a strong showing of prejudice." *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) (citation omitted). This is

_____

[19] That said, the Court urges the government to read *Smith v. Arizona* carefully and to ensure it can properly elicit its proposed testimony without running afoul of that ruling. The evidence it seeks to offer (given the shift in lab technicians) raises significant Confrontation Clause concerns. *Smith*, 2024 WL 3074423, at *7–*10; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309–11 (2009). And the Court will not hesitate to exclude any evidence that flirts with the line separating evidence not violating the Confrontation Clause from that which does.

especially the case given Rule 8(a) of the Federal Rules of Criminal Procedure permits joinder of two or more offenses "of the same or similar character." And here, the indictment charges Moore with materially similar conduct on both dates in question: possession of a firearm in connection with the trafficking of controlled substances. (Doc. 1). Though the transactions occurred at different times and at different locations, the Court finds that all the counts in the indictment are logically related and markedly similar (especially given Moore has not explained with any specificity what prejudice will result). *Hang Le-Thy Tran*, 433 F.3d at 477–78. Simply, there is no reason in the record for severance. So the Court **DENIES** Moore's Demand for Severance of Charges Pursuant to Rule 14(a) (Doc. 248).

Moore also filed a motion to suppress statements he made during his custodial arrest. (Doc. 260, #1428–29). The government provided the Court with the video of this arrest, which has also been shared with Moore. (Doc. 276, #1486; Doc. 276-1, #1497; 6/20/24 Docket Entry). In the video, which the Court has reviewed in full, Moore is given his *Miranda* warnings, is provided a copy of the search warrant, and is notified of the charges against him in response to his inquiry into the nature of the crimes of which he has been accused. The officer had initially sought to interrogate Moore after having provided Moore with an explanation of his *Miranda* rights. But as soon as Moore unambiguously notified the officer that he wanted to speak with an attorney before further interrogation, all police questioning ceased. The remainder of the interaction involved the officer's simply responding to *Moore*'s questions without seeking to illicit any statements from Moore himself. This does not violate Moore's

*Miranda* rights. *United States v. Ware*, 338 F.3d 476, 480–81 (6th Cir. 2003). Accordingly, the Court **DENIES** Moore's Demand to Suppress Statements Made in Interview (Doc. 260).

Moore moves to have certain papers seized during the execution of a search warrant at the 3100 Vienna Woods address returned. (Doc. 267, #1453–54). These items Moore asks for refer either to mail he has received or documents Moore received at the address in question connecting him to the location in question (discussing receipts, tax papers, paychecks, and "notices"). (*Id.*). The search warrant executed at that address covers such materials: "[a]ny records, written or electronic, tending to show … income … for said contraband, [and] *any* items tending to show ownership or control of said property, such as keys or mail." (Doc. 276-2, #1500). Documents related to income could be relevant to demonstration of Moore's receipt of funds from illegal narcotics sales. Mail, notices, paycheck stubs, and other materials received by Moore at that address are relevant items for "show[ing] ownership or control of" the 3100 Vienna Woods apartment. Moore is correct that on their own these items do not demonstrate illegality. (Doc. 283, #1533). But whether the items themselves independently tend to prove the existence of a crime does not mean the items cannot be seized at a given location. After all, such evidence is highly relevant to the government's ability to prove its case by connecting Moore to the alleged drug trafficking activities occurring at the Vienna Woods location. *United States v. Greene*, 250 F.3d 471, 477–78 (6th Cir. 2001). And the Sixth Circuit has long found that a search warrant's generic description of papers or records showing a suspect's control

of a given location does not render it constitutionally defective. *Id.* (collecting cases). So the Court finds that the items to whose seizure Moore objects were both covered by the warrant and lawfully seized. And that means the items are not inadmissible at trial on the grounds that they were illegally seized. The Court therefore **DENIES** Moore's Motion to Return & Exclude Personal Papers Illegally Seized (Doc. 267).

Moore's most recent motion requests a dismissal of his indictment based on cumulative error, (Doc. 275, #1480–81)—a doctrine appellate courts use when evaluating issues raised on appeal after a trial has occurred and final judgment entered. *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). The problem for Moore in seeking a dismissal of the indictment based on the cumulative effect of purported errors is twofold. First, this doctrine does not apply until *after* trial—no such trial has yet occurred. *Id.* Second, the remedy for holding that the combined effect of trial errors wrought a due process violation is a new trial, not dismissal. *Id.* Both issues mean Moore's motion lacks merit. Thus, the Court **DENIES** Moore's Motion to Dismiss Pursuant to Cumulative Effect Doctrine (Doc. 275).

## G. Requests for Witness Subpoenas (Docs. 242, 252, 262, 280, 282, and 284) and Motion for Body Camera Footage (Doc. 247)

Moore has filed six separate motions for the issuance of subpoenas to compel witnesses to testify at trial as part of his defense. (Docs. 242, 252, 262, 280, 282, 284). Given the Court's prior determination to grant Moore IFP status, (Doc. 138, #829), the Court construes these motions as requesting subpoenas under Federal Rule of Criminal Procedure 17(b), which authorizes the Court to order subpoenas at the government's expense. *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990). In

each of these documents, Moore requests the presence of the identified witnesses but does not explain his reasons for so requesting. But as stated in Rule 17(b) and as caselaw has recognized, "[a] defendant is not automatically entitled to a Rule 17(b) subpoena; rather, the defendant must first make a preliminary showing that the witness is necessary to present an adequate defense." *United States v. McCaskill*, 48 F. App'x 961, 962 (6th Cir. 2002); *Moore*, 917 F.2d at 230 (explaining that the necessity requirement avoids abuse of the compulsory process).

As Moore has not provided this preliminary showing of need, the Court **DENIES** these motions (Docs. 242, 252, 262, 280, 282, 284). But the Court makes clear that its denial is **WITHOUT PREJUDICE** because it suspects Moore was unaware of the requirement that he provide an ex parte explanation of need to the Court. What this means is Moore must "aver facts [within the knowledge of these witnesses] which, if true, would be relevant to any issue in the case." *Moore*, 917 F.2d at 230 (cleaned up). And Moore must ensure that he explains the evidence to which he believes these witnesses will testify with sufficient specificity that the Court can understand the connection between his case and defense and the witness's testimony—mere generalities will not suffice. *McCaskill*, 48 F. App'x at 962; *see United States v. Barker*, 553 F.2d 1013, 1020 (6th Cir. 1977) (holding that a district court did not abuse its discretion in denying a Rule 17(b) motion when the defendant's affidavit in support of his motion stated only that a proposed witness would testify

"concerning the facts and circumstances surrounding the alleged" crime). Once Moore provides this explanation the Court will promptly resolve the requests.[20]

Moore has also filed a motion requesting that the government produce Officer Brandon Connley's body camera footage from the dates he executed the search warrants at the 3151 Gobel Avenue and 3100 Vienna Woods locations. (Doc. 247).[21] This evidence speaks directly to (and thus is relevant to) the government's seizure of the physical evidence in this case and its investigation of the conduct for which it charges him in this case and given that the government will be proffering Officer Connley as one of its witnesses. (*See* Doc. 56, #323; Doc. 70, #508; Doc. 110, #695; Doc. 122, #756). As a result, Moore is entitled to this evidence. *Cf. United States v. Jackson*, No. 17-50, 2018 WL 1952520, at *2–*3 (E.D. Ky. Apr. 25, 2018) (excluding as irrelevant an overbroad request for all body-camera footage ever recorded for an officer expected to testify at the defendant's trial as the defendant could not raise the potential violations of *others*' Fourth Amendment rights); *see generally United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (requiring defendants to show the relevance of specific record or other documentary evidence requested under Federal Rule of Criminal Procedure 17(c) to be entitled to the production of that evidence). The Court

---

[20] The Court stresses that the motions will be filed ex parte. As a result, it **DIRECTS** The Clerk's Office to restrict these filings (if so labeled as "ex parte" communication) on the docket until the Court orders otherwise. The necessity "showing necessarily reveals a Defendant's defense," which means it is imperative that no inadvertent disclosure to the government will occur when Moore files these requests. *United States v. Cook*, No. 3:18-cr-19, 2019 WL 2414887, at *4 (E.D. Tenn. June 7, 2019).

[21] For some reason, this motion was filed (and labeled) "ex parte," which means that it has been restricted from public view. But as this request would be served on the government directly, there is no reason to restrict it on the docket.

presumes the government has already provided this evidence (if it exists) as part of the discovery process, especially in connection with the parties' litigation of Moore's motion to suppress, as it would be required to do so under Federal Rule of Criminal Procedure 16(a)(1)(E). *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013) (explaining that the government must provide any record or documentary evidence under Rule 16(a)(1)(E) if the government has control over the evidence and it is material to the defense, will be offered in the government's case-in-chief, or otherwise belongs to the defendant). So whether viewed as a request under Rule 16(a)(1)(E) or Rule 17(c), Moore is entitled to this evidence assuming it exists. Accordingly, the Court **GRANTS** Moore's Ex Parte Motion for Issuance of Subpoena for Official Records (Doc. 247). If the government has not yet provided this evidence (if it exists), the Court **ORDERS** the government to do so **IMMEDIATELY**.

## H. Evidentiary Motions Best Left for Trial (Docs. 36, 50, 93, 110, 142, 230, and 251)

At long last, that brings us to the several evidentiary motions that seek exclusion of certain evidence at trial. Moore has filed seven distinct motions. (Docs. 36, 50, 93, 110, 142, 230, 251). Each of these challenges different aspects of the evidence the government wishes to introduce.

Moore's first motion requests that the government's presentation of evidence regarding his past criminal convictions be limited to only their existence, not the details of what transpired. (Doc. 36, #180). The Court acknowledges the prejudice that can arise in these instances when evidence of past convictions is put before a jury. *United States v. Clark*, 377 F. App'x 451, 458–59 (6th Cir. 2010). But there are

also valid ways in which the government could put forward such evidence depending on the focus of its trial strategy. *United States v. Bell*, 516 F.3d 432, 441–44 (6th Cir. 2008) (analyzing the several ways past convictions may lawfully be admitted at trial). As implied by this observation, the admissibility of evidence of Moore's past convictions necessarily is a highly fact-specific inquiry that turns on for what purpose the government proffers such evidence. Therefore, the Court cannot assess this question until it sees the evidence introduced at trial. That said, the Court notes that, to the extent the government intends to rely on such evidence solely to prove that Moore was in fact a felon at the time that he possessed a firearm, a necessary element for a conviction under 18 U.S.C. § 922(g), Moore is instead entitled to agree to an *Old Chief* stipulation if he wishes, thereby obviating the need for the government to proffer separate proof those convictions occurred—a topic that the Court will explore at the final pretrial conference. *See Old Chief v. United States*, 519 U.S. 172 (1997).

This observation that it is too early to decide those motions equally applies to Moore's motions seeking to exclude evidence obtained from the execution of a search warrant at a 2300 Ferguson Avenue location, (Doc. 93),[22] and evidence related to uncharged controlled buys purportedly made with Moore, (Doc. 142, #835–37). It is

---

[22] The Court notes that the government suggested at the suppression hearing that evidence obtained from the Ferguson Avenue location "has absolutely no bearing on this case whatsoever." (Doc. 56, #370). That supports Moore's argument that this evidence will need to be excluded—at the very least under Rule 403. But the Court does not so rule at this time because the Court recognizes that there is a means by which the government seeks to introduce some evidence related to the Ferguson location merely to explain the government's investigative process to the jury. *See United States v. Martin*, 897 F.2d 1368, 1371–72 (6th Cir. 1990). That said, the government must be able to lay a solid foundation for this evidence and its connection to Moore before seeking to admit it. The government's statement at the suppression hearing raises some roadblocks to admissibility.

possible that the government may have valid purposes for using this evidence at trial. That depends entirely on the government's proffer and underlying purpose for its admission at the time the government seeks to do so. *United States v. Wilson*, 837 F. App'x 396, 399–400 (6th Cir. 2020) (explaining that evidence of uncharged drug sales were admissible because it constituted useful background evidence connecting the defendant to the charged conduct and location in question). So the Court will defer ruling on these issues until trial. Of course, Rule 403 and the availability of limiting instructions are background principles that will govern the Court's assessment at that time.

Along similar lines, Moore moves to exclude a photo taken from his phone purportedly showing him holding methamphetamine. (Doc. 50, #253; Doc. 70, #507). The government offers several potentially valid bases for the admission of this photo—to establish Moore's identity, his connection to the location where drugs were located, and his intent to possess and to distribute the drugs in question, (Doc. 70, #507–08). *Bell*, 516 F.3d at 443–44 (noting that past drug distribution evidence could be used to prove a defendant's intent, plan, or knowledge related to the drug transactions actually charged). Yes, the government will have to provide a valid foundation demonstrating how this photo (allegedly nearly one year old at the time of the charged buys), (Doc. 50, #253), has a meaningful nexus to the charged conduct to demonstrate Moore's intent or modus operandi. *Bell*, 516 F.3d at 443–44. And of course, depending on *what* exactly the photo depicts, risk of undue prejudice under Rule 403 may require its exclusion at trial. But this determination, again, will turn

on what the evidence is, the foundation laid, how the government uses it, and what other evidence is admitted at trial. The Court cannot rule on the matter in the abstract at this time.

In the same motion, Moore also seeks to exclude testimony from an officer who purportedly will identify Moore as the speaking party on a monitored phone call and will testify to what Moore stated on that call. (Doc. 50, #253–54). With the proper foundation, this evidence could be admissible. *United States v. Simms*, 351 F. App'x 64, 68–69 (6th Cir. 2009) (explaining the foundation required for voice identification testimony to be admissible); *United States v. Jaffal*, 79 F.4th 582, 598 (6th Cir. 2023) (holding that a defendant's own statements on a recorded call are admissible against him as such statements are not hearsay); *United States v. Garcia Hernandez*, 389 F. App'x 894, 900 (11th Cir. 2010) ("Detective Lamprou's testimony about statements he heard [defendant make] on the monitored phone call was not hearsay."). So the Court will defer ruling on the matters until trial based on the government's proffer.

Moore seeks to exclude two videos that, based on his description, seem to relate to the government's investigation and surveillance of Moore in the lead-up to his arrest. (Doc. 110, #695–96). The Court does not have this evidence before it at this time. But from Moore's description, such evidence appears relevant to the charges against him, given the liberal definition of relevance under Rule 401. *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) ("The rules regarding relevancy, however, are quite liberal and provide that 'evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence' is relevant." (quoting Fed. R. Evid. 401)). And there is a means by which the government could provide a valid foundation for and authenticate these videos. (*See* Doc. 122, #756 (explaining the government's position that such evidence, which it assures the Court it will authenticate and for which it will lay a foundation at trial, relates to controlled buys it allegedly set up with Moore)). Any concern about prejudice or the government's proffer for an impermissible purpose will have to be aired at trial when the evidence is directly before the Court and laid against the backdrop of the government's case in chief. So, like the other motions, the Court will defer until trial.

Moore challenges much of the same evidence (evidence related to controlled buys that are not charged and testimony regarding monitored phone calls) under Rule 403. (Doc. 230, #1310–12). As noted above, such evidence is certainly admissible for select purposes—and through means the government proposes if actually presented at trial. (*See* Doc. 276, #1488–91). And while prejudice can be a basis for excluding evidence that is certainly relevant (to proving the bases noted above), identifying a reason to think prejudice might result is not a reason to exclude under Rule 403. For one thing, "virtually all evidence is prejudicial or it isn't material." *Robinson*, 149 F.3d at 515 (cleaned up). That is why Rule 403 focuses on *unfair* prejudice. For another, Rule 403 requires exclusion only upon a finding that a danger of said unfair prejudice "substantially outweighs" its probative value. And such an inquiry turns on the nature of the evidence, its relation to other evidence admitted, as well as the availability of a limiting instruction. *United States v. Asher*, 910 F.3d 854, 860–62

(6th Cir. 2018). All of that is best understood through a trial lens. Accordingly, the Court declines to make abstract assessments ex ante without the full context available as evidence comes in at trial.

Lastly, Moore seeks to exclude any testimony from the government's witness who intends to testify regarding the controlled buys Moore allegedly made with the officer or the undercover informant. (Doc. 251, #1401–03). To the extent the officer testifies merely to what he observed, this is in his personal knowledge and is not inadmissible on that basis. Fed. R. Evid. 602. And if the witness speaks to statements he personally heard the defendant make, there is no hearsay problem as noted above. *Jaffal*, 79 F.4th at *Garcia Hernandez*, 389 F. App'x at 900; Fed. R. Evid. 802(d)(2). Moreover, while there might be hearsay and Confrontation Clause concerns about the officer's testimony about statements the *informant* made, such evidence may be admissible depending on the purpose for which the government proffers such statements. *Compare United States v. Wilson*, 653 F. App'x 433, 442–43 (6th Cir. 2016) (holding that an informant's out-of-court statements were properly admitted as non-hearsay without violating the Confrontation Clause because the evidence was proffered as background and context for other evidence admitted at trial), *with United States v. McGee*, 529 F.3d 691, 698 (6th Cir. 2008) (holding that the district court improperly admitted informant's hearsay statements in violation of the Confrontation Clause because they were offered as substantive proof of the defendant's guilt). For the reasons stated, that means the Court cannot make that

determination until trial. So the Court, mindful of these issues, will defer ruling until the evidence is introduced for its admittance by the Court at trial.

### CONCLUSION

For the reasons given above, the Court **DENIES** (Docs. 19, 27, 54, 64, 65, 66, 75, 81, 85, 88, 92, 105, 107, 118, 119, 125, 131, 132, 143, 150, 153, 154, 155, 156, 159, 161, 164, 168, 181, 182, 183, 184, 191, 200, 206, 213, 217, 222, 223, 225, 227, 246, 248, 255-1, 258-1, 259, 260, 264, 267, 268, 269, 270, 272, 275); **DENIES WITHOUT PREJUDICE** (Docs. 242, 252, 262, 280, 282, 284); **DENIES AS MOOT** (Docs. 29, 126, 128, 145, 169, 174, 185, 186, 192, 199, 202, 205, 219, 228, 229, 237, 238, 240, 241, 257, 263, 271, 273, 274, 278); **GRANTS** (Doc. 247); **DENIES IN PART WITHOUT PREJUDICE AND DEFERS ITS RULING UNTIL TRIAL IN PART** (Doc. 36); and **DEFERS ITS RULING UNTIL TRIAL** (Docs. 50, 93, 110, 142, 230, 251).

       **SO ORDERED.**

July 2, 2024
**DATE**

          **DOUGLAS R. COLE**
          **UNITED STATES DISTRICT JUDGE**