**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

                            **Case No. 1:23-cr-47**

   **v.**

                            **JUDGE DOUGLAS R. COLE**

**RODERICK MOORE,**

       **Defendant.**

**SECOND OMNIBUS ORDER**

On April 26, 2023, the grand jury indicted Defendant Roderick Moore for two counts of possession with intent to distribute and attempted distribution of controlled substances, two counts of possessing a firearm in furtherance of drug trafficking offenses, and two counts of possession of a firearm by a prohibited person, all arising from actions he allegedly took in March and May 2022.[1] (Doc. 1). Trial is set to begin on October 15, 2024. Before the Court are several motions Moore has filed in advance of trial, which are ripe for resolution. The Court previously ruled on many of the motions filed on this docket in an Omnibus Order. (Doc. 287). The remaining motions are the last issues left outstanding prior to trial.[2] Nearly all of these motions press

---

[1] To allay any of Moore's concerns, (Doc. 303), the Court makes clear that it has not and does not intend to have any ruling in this matter suggest that he is guilty of the crimes in question before the government has successfully proven such guilt beyond a reasonable doubt to a jury. The Court has and continues to recognize that Moore maintains his innocence. The Court simply has relied on the evidence and the allegations put before it to make pretrial legal determinations. Any assessment of guilt or innocence will be made at trial.

[2] At the last status conference, the Court set a calendar order requiring the parties to file any remaining motions by September 4, 2024, and replies by September 26, 2024. (Doc. 326). As these dates have passed, the Court **STRIKES** the motions docketed as Doc. 353, Doc. 354, and Doc. 364, which Moore filed out of time and therefore are not properly before the Court.

legally or factually frivolous arguments or are moot, as was the case on the last go-round.[3] The Court addresses these remaining motions wholesale in this Second Omnibus Order. That said, the Court finds that several motions involve evidentiary issues that the Court cannot resolve in the abstract. So the Court will defer ruling on those matters until the evidence at issue is proffered at trial.

A.  **Motions to Reconsider the Denial of the Prior Denials of Moore's Request to Suppress Evidence and to Hold a *Franks* Hearing (Docs. 304, 320, 325, 327, 343, 351).**

In six of the motions, each invoking purportedly new evidence, Moore asks the Court to reconsider its decision to deny his motions to suppress evidence and for a *Franks* hearing. (Doc. 249). Courts are "extremely reluctant" to grant reconsideration of suppression decisions; when relying on new evidence, the movant "should provide a reasonable explanation for failure to present the evidence initially." *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004) (citations omitted) (cleaned up), *vacated on other grounds*, 543 U.S. 1111 (2005). In other words, to be new, the evidence must have been previously unavailable. *United States v. Thompson*, 580 F. Supp. 3d 503, 506 (N.D. Ohio 2022) (quotations omitted). Yet, in many of these motions, Moore fails

---

The Court also **STRIKES** Moore's Charge of Judicial Notice Fed. R. 201 & Exhibits (Doc. 359) and his Supplemental Arguement [sic] for Reconsideration in Light of New Evidence (Doc. 360). The Court will strike any future motions Moore files beyond this Order's date by notation order, as the Court advised Moore at the recent *Daubert* hearing. A decision on the *Daubert* issue Moore raised, (Doc. 338), is also forthcoming.

[3] The Court does not treat several of Defendant Moore's filings that are stylized as "Judicial Notices" or "Supplemental Affidavits," (Docs. 299, 305, 307, 319, 328, 331, 344, 347) as motions. After reviewing these documents, the Court determines that these filings either (1) do not request relief, or (2) do not request differentiated relief from motions decided in this Second Omnibus Order. Nearly all of the substance Moore included in these documents is included elsewhere in other motions decided here. Any minor details or differences in substance are immaterial.

to show how the evidence he cites was previously unavailable. In others, while the evidence may be new, it does not rise to the level needed to justify reconsideration of the Court's past decisions. So the Court denies these motions to reconsider.

The first new evidence Moore points to is GPS-tracking data that the government collected from a GPS device attached to a Honda Civic believed to be Moore's primary vehicle. (Doc. 304; Doc. 56, #330). Moore says he received this data on June 24, 2024—one month after the Court's Opinion and Order denying Moore's motion to suppress and motion for a *Franks* hearing. (Doc. 304, #1652; *accord* Doc. 249). After his own analysis of the data—an analysis that Moore does not bother to share with the Court—Moore asserted that the evidence is actually exculpatory because "the tracking locations do not place the defendant at the location of the alleged controlled buys at the time and date asserted."[4] (Doc. 304, #1652). If this is so, Moore may have an argument to make at trial. But this recent analysis is not a reason for the Court to reconsider its suppression decision. The Court already had opportunity to weigh whether the installation of the GPS-tracker, and thus its data, warranted suppression. (*See* Doc. 249, #1397). It found no Fourth Amendment violation, so the evidence is admissible. (*Id.*). Further, even if the GPS data shows what Moore alleges, the Court also said that "[t]he personal observations of Officer Connley and other CPD officers constitute competent evidence of the fact that Moore

---

[4] The Court is unsure what "time and date asserted" Moore is referencing, but assumes he is referring to the applicable affidavit. (*See* Doc. 281, #1526–27 ("the GPS law enforcement provides do [sic] not place [Moore] at the alleged locations of the alleged buys on the alleged dates. Simply put law enforcement has contradicted itself via affidavit, perjured testimony, reports, and now its own evidence.")).

engaged in the controlled buys." (Op. & Order, Doc. 291, #1607 n.3). So, the GPS data, no matter what it shows, would not change the Court's determination that there was probable cause supporting the various warrants at issue in this case. And if what Moore is really arguing (as seems to be the case) is that the GPS data shows that the officers were lying in connection with obtaining a warrant, Moore needs to do more than merely *assert* that the GPS data shows his car was not present. He would need to actually show the Court why that is the case. For example, he could attach a map showing the locations that he claims the GPS data represents, and an explanation of how he arrived at that result. Bald assertions that the GPS data shows he wasn't there, however, do not cut it. And even then, as the government has acknowledged elsewhere, the dates of the buys in the affidavit supporting the warrant may be off by a day or two in one direction or the other—an error that the Court found was not material. (*See, e.g., infra* at 7, n. 10). So if Moore's only point is that the car GPS data shows that he was not at the controlled-buy sites *on the dates listed in the affidavit*, that may not be the silver bullet he believes it to be.

In any event, whether Moore's analysis of the data proves exculpatory is a potential line of argument for him to pursue at trial.[5] Accordingly, the Court **DENIES** Moore's Renewed Motion to Reconsider in Light of New Evid. (Doc. 304).

The next purportedly new evidence Moore presents are cellphone records that Moore claims "prove[] exculpatory and … expose[] another falsity in law

---

[5] Moore also says that the government has failed to comply in providing him with cellphone location data. (Doc. 304, #1653). For reasons explained below, the Court understands that government has now produced this evidence. *See infra* Part D.

4

enforcements [sic] affidavit."[6] (Doc. 320, #1740). Moore says that his analysis of these records indicates an absence of communication between two phone numbers, which were supposedly the means of contact between two suspects, whose relationship was discussed in an affidavit.[7] While Moore's analysis of the evidence may be new, the evidence itself apparently is not. The government says that it provided Moore with these records "approximately a year ago." (Doc. 337, #1832). If Moore had the records a year ago, he cannot now claim that their contents are new evidence. Moreover, even if he could, the government alleges that Moore used multiple cellphones (and thus cellphone numbers) during the time period of the investigation and that the records show calls between one of those numbers and the suspect at issue. (*Id.* at #1832–33). To meet his burden of showing a problem with the affidavit, then, Moore would need to argue that *none* of the cellphone numbers linked him to the other suspect at the relevant time. He has not attempted to make that showing, and so, whether or not

---

[6] Moore ostensibly is trying to rehash the Court's previous decision to deny Moore a *Franks* hearing. *Compare* ((Doc. 320, #1740) (stating that the affiant's "statement is knowingly and deliberately false.")) *with Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (stating that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."). The Court already found that probable cause existed for the warrants at issue for ample reasons. (*See* Doc. 249, #1389–93).

[7] The affidavit Moore seems to contest is the one Officer Connley executed as part of his request for a warrant authorizing him to place a GPS tracker on the Honda Civic. (*See* Doc. 279, #1515 ("SUSPECT #1 and SUSPECT #2 are believed to be working together to further their illegal drug sales"); Doc. 320, #1741 ("[t]his false statement is indeed material as the affiant cites the communication between the two individuals as a [sic] underlying need for G.P.C. [sic] surveillance. See page 5 reason c [of the affidavit].")). But the statement Moore alludes to does not specify a phone number. And as we discuss, Moore would need to show that there was no evidence of communication between *any* phone numbers linked to him, or any other communication, to potentially prevail under *Franks*.

the cellphone call records are new evidence, the Court **DENIES** Moore's Supplemental Motion to Reconsider in Light of New Evidence (Doc. 320).

Moore next points to alleged inconsistencies surrounding the controlled buys law enforcement conducted during its investigation. (Doc. 325). Moore essentially argues that (1) the government has made inconsistent and contradictory statements about the number of controlled buys that occurred during the investigation,[8] and (2) photos of the money used in the controlled buys show that the dates of the controlled buys listed in the affidavits were incorrect. There are two problems that Moore cannot overcome. First, the government says that the video and photographs of the money were turned over a year ago.[9] Second, the controlled buys were discussed at length during the suppression hearing. (*See generally* Doc. 56). In short, none of Moore's claims in this motion present new evidence or attempt to explain why he failed to present the evidence before. *Carter*, 374 F.3d at 405. More importantly, Moore does not contest that at least *some* controlled buys occurred during the general

---

[8] For example, Moore says that "[t]he [g]overnment … proffered evidence, testimony, and motions alleging [sic] only 2 controlled buys" which contradicts affidavits where the government claimed a varying number, either three or four, of controlled buys. (Doc. 325, #1765). Moore directs the Court to testimony from the suppression hearing. But upon examination, the testimony Moore points to relates only to controlled buys at the 3151 Gobel address, not controlled buys conducted during the investigation overall. (*See, e.g.*, Doc. 56, #324 ("[W]e made two controlled fentanyl buys from Mr. Moore at that Gobel address")). In other words, the government discussed more than two buys in that hearing. (*See id.* at #338–39 (discussing the lab processing of fentanyl that law enforcement obtained through controlled buys near the Vienna Woods address)).

[9] Moore says his standby counsel provided him with these pictures on August 7, 2024. (Doc. 325, #1764). But Moore does not say when the government made these pictures available.

time period the government claims[10]—for those reasons, even if the Court had to contend with the merits of this stale evidence, it would not alter the Court's previous decisions. Accordingly, the Court **DENIES** Moore's Supplemental Motion to Reconsider in Light of New Evidence (Doc. 325).

Moore alleges yet more inconsistencies. He claims that a statement in a trial preparation report the government provided, along with an affidavit statement, differ from testimony offered at the suppression hearing.[11] (Doc. 327, #1776). Moore does not articulate exactly *how* these statements are inconsistent. What is clear is that each concerns a controlled buy near the Vienna Woods address. First, in the suppression hearing testimony Moore cites, Officer Connley testified that "[a controlled buy occurred] right outside of the Vienna Woods complex on a McFarland Park Drive ... which is essentially you drive outside Vienna Woods complex, drive across Western Northern Boulevard, and that street is a hundred yards down on the left."[12] (Doc. 56, #337). Second, the affidavit he points to says that an informant was

---

[10] In other words, Moore's argument is not material. *See United States v. Ellison*, __ F.Supp.3d __, 2024 WL 3278937, at *10 (E.D. Mich. 2024) (explaining how a detective's incorrect recitation of a traffic-stop date (January 7 versus January 11), was immaterial in evaluating a motion to suppress).

[11] Again, the government says that Moore was provided with this document "approximately a year ago." (Doc. 337, #1836). If so, this is not new evidence that merits reconsideration. Nonetheless, the Court still explains why this evidence would not require it to reconsider its decisions.

[12] The officer also testified that he saw a "few second interchange between [the] informant and Mr. Moore." (Doc. 56, #337). While this is not included in the affidavit, (*see* Doc. 327, #1778), that does not make the officer's statements inconsistent. Anticipating Moore's potential argument that the government's attorney disclosed that "there [was] not a positive ID on Moore the day of the sale re: Vienna woods," (Doc. 328, #1788), that statement concerned the second, not the first controlled buy near the Vienna Woods address. (*See* Doc. 56, #333–37). Further, concerning the first controlled buy, the government clarified that

"deployed to the area of 3100 Harrison Avenue … Moore left 3100 Vienna Drive operating his blue Honda Civic … [and] drove to a nearby street." (Doc. 35-2, #178). Third, there is the trial preparation report Moore attaches to his motion. Here, strangely, Moore directs the Court's attention only to statements relating to the 3151 Gobel address controlled buys. (Doc. 327, #1778, #1781). But on the next page of the document, the report says the informant was "deployed to various locations near West Fork Road and Montana Avenue and Harrison and Boudinot Avenue." (*Id.* at #1782). While Moore contends these are all different locations, a quick look at a map reveals that these streets are actually quite near one another—they all describe the same general area. Put differently, Moore refers to statements that appear consistent. Accordingly, the Court **DENIES** Moore's Supplemental Motion & Exhibits to Reconsider in Light of New Evidence (Doc. 327).

Finally, Moore raises alleged problems stemming from body camera footage he reviewed. First, he says that the footage "showed absolutely no search or recovery of the charged contraband." (Doc. 343, #1856). But just because an event is not filmed does not mean that it did not occur.[13] To prove that contraband was in fact recovered, the government plans to call officers who conducted the search and to introduce the

---

"[Moore] was seen getting into the car, showing up on the scene and coming back," even though he could not be seen inside of the car because of its tinted windows. (*Id.* at #394). While Moore has continued to express dissatisfaction with the Court's ruling on his hearsay objection during this aspect of the suppression hearing, his objection had no merit at the time and has not improved with age. *United States v. Killebrew*, 594 F.2d 1103, 1105 (6th Cir. 1979) ("In a suppression hearing to determine probable cause hearsay evidence is admissible.").

[13] *See infra* Part D for why such body camera evidence does not exist.

8

seized items from the search.[14] (Doc. 356, #1942). So this first problem does not justify reconsideration of the Court's suppression decision. Second, and more importantly, Moore says that he was "arrested and transported to lock-up during the execution of a search warrant, well before any alleged contraband was discovered" and "arrested without cause." (Doc. 343, #1857). While the government concedes that police were executing a search warrant and did not have an arrest warrant during the May 5, 2022, search of the 3100 Vienna Woods address, it maintains that the police were entitled to make a warrantless arrest based on ample evidence establishing probable cause. (Doc. 356, #1942). In assessing whether there is probable cause to support a warrantless arrest, the Court evaluates the "events leading up to the arrest" and determines "whether an objectively reasonable officer would conclude that there is a 'probability or substantial chance of criminal activity.'" *Fisher v. Jordan*, 91 F.4th 419, 425 (6th Cir. 2024). The government offers the following events leading up to Moore's arrest in support of its position: (1) the multiple controlled buys implicating Moore in the alleged crimes; and (2) the seizure of 1.5 kg of methamphetamine and a handgun from the other apartment searched. (Doc. 356, #1942). Given that probable cause is "not a high bar," the Court agrees with the government that there was probable cause to conduct a warrantless arrest at the time. *Fisher*, 91 F.4th at 425 (citation omitted). Perhaps, the officers could have, or should have, obtained an arrest warrant before this search of the Vienna Woods address. But the officers were seeking to gather additional evidence, so the Court does not take issue with the lack of an

---

[14] And Moore can cross-examine these witnesses with questions related to the lack of body camera footage.

arrest warrant at the time of arrest. S*ee United States v. Sanngineto-Miranda*, 859 F.2d 1501, 1509 (6th Cir. 1988) (explaining that officers were not required to seek an arrest warrant "as soon as they had probable cause" because they "reasonably could wait until they gathered additional evidence"). Accordingly, this evidence does not call for reconsideration and the Court **DENIES** Moore's Supplemental Motion for Reconsideration in Light of Newly Provided Evid. (Doc. 343).

Relatedly, Moore claims that the lack of body camera footage depicting the search at the 3151 Gobel address requires suppression of evidence because "it is likely Officers were in fact wearing body cameras" while executing the search warrant and because it violated CPD policy.[15] (Doc. 351, #1919). Moore may be correct that officers were wearing body cameras during the search. Nonetheless, according to the government, the footage was either not captured or does not exist. (Doc. 356, #1940–42). That this evidence is not available is not "new" evidence—the Court did not have video camera evidence of the search at the time of its suppression decision, nor does it have such evidence now. Nothing has changed. Of course, Moore can cross-examine

---

[15] While Moore cites CPD policy to argue that the lack of footage was a policy violation, the policy states that "[a]fter the 90-day retention period, recording not categorized for retention will be deleted … It is the responsibility of any investigator to categorize the recordings beyond the 90-day retention period, if necessary." Body Worn Camera System, Cincinnati Police Dep't Manual § 12.540 (2021), https://www.cincinnati-oh.gov/police/department-references/police-department-procedure-manual/12540/ [https://perma.cc/5NU6-EVJT]. But the policy does not concern the necessity of the footage to defendants, but rather to the "investigation and prosecution of criminal offenses." *Id.* It could be the case that an investigator determined that the footage from the searches was unnecessary and that officer accounts were sufficient for investigatory purposes and the footage deleted per the policy. More likely is that the footage was never captured in the first place, which the government suggests. (Doc. 356, #1941). The policy does not require officers to use their BWC systems during the execution of search warrants. Cincinnati Police Dep't Manual § 12.540(A)(2). Instead, it merely gives officer "the right to use the BWC system … as long as they have a legal right to be there (e.g., call for service, valid search warrant, consent of owner)." *Id.*.

testifying officers about the search (and whether they recorded it or not), but he does not give the Court reason to reconsider its prior decisions. Nor does Moore provide the Court any reason to think that such video evidence, even if it existed, would be exculpatory. For evidence "whose exculpatory value is indeterminate and only potentially useful" Moore must demonstrate: (1) the government failed to preserve the evidence in bad faith; (2) the exculpatory value of the evidence was apparent before its destruction; and (3) Moore would be unable to obtain comparable evidence by other reasonably available means. *United States v. Collins*, 799 F.3d 554, 569 (6th Cir. 2015). And "to establish bad faith, '[Moore] must prove official animus or a conscious effort to suppress exculpatory evidence.'" *Id.* (citation omitted). He does not do so here.[16] So, the Court **DENIES** Moore's Supplemental Motion to Suppress Evidence Due to "Due Process," Brady Violation (Doc. 351).

## B. *Loper Bright* and *Bruen* Related Motions (Docs. 321, 322).

Moore asks the Court to reconsider its prior *Bruen* analysis through two motions citing the Supreme Court's recent overruling of the *Chevron* doctrine in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024). (Docs. 321, 322). Both motions note that the Supreme Court's holding in *Loper Bright* reiterated the "foundation [sic] decision of *Marbury v. Madison*, … that '[i]t is emphatically the province and duty of the judicial department to say what the law is.'" (Doc. 321, #1743; *see* Doc. 322, #1748–49). And based on that, Moore argues the Court is free to rule that a conviction

---

[16] For that reason, Moore's claim of spoliation of evidence also fails. (Doc. 351, #1919). *See Adkins v. Wolever*, 692 F.3d 499, 504 (6th Cir. 2012) ("To warrant a spoliation sanction, the party seeking the sanction must show that the evidence was destroyed with a culpable state of mind.").

pursuant to § 922(g) violates Moore's Second Amendment rights. (Doc. 321, #1743–44; Doc. 322, #1749–50). But *Chevron* has no bearing on this case, as the Court is not applying an agency's interpretation of its own organic statute. Rather, the Court previously applied, and continues to apply, caselaw that expounds upon the proper interpretation of the Second Amendment as applied to statutory language governing the charges in the indictment. (Doc. 287, #1567–70 (discussing caselaw from courts of appeals and the Supreme Court)). Accordingly, these motions must be denied on this basis alone.

But even were the Court to reconsider the matter, it would reach the same conclusion it did previously. That is because the Sixth Circuit has since held that § 922(g)(1) convictions may be sustained against constitutional challenge when the defendant's past felonies demonstrate he is "dangerous." *United States v. Williams*, 113 F.4th 637, 662–63 (6th Cir. 2024). And while the Sixth Circuit explained that "each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous," *id.* at 663, it made clear that a person is validly considered dangerous (and thus § 922(g) can constitutionally be applied against him) if his prior crime involved harm "against the body of another human being" or "inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary." *Id.* Moore has convictions that fall into those categories. (Doc. 9, #26). Accordingly, the Court concludes (as this new Sixth Circuit precedent confirms) that its prior decision was correct—Moore may constitutionally be subject to prosecution for violating 18 U.S.C. § 922(g)(1).

So the Court **DENIES** Moore's Motion to Strike Counts Brought Under 18 U.S.C. § 922(g) Pursuant to SCOTUS Recent Overturning of the "Chevron Doctrine" (Doc. 321) and his Renewed Motion Doc #225 in Light of Scouts [sic] Overturn of the "Chevron Doctrine" (Doc. 322).

## C.    Miscellaneous Motions Lacking Merit (Docs. 301, 306, 310 315, 329).

Moore moves the Court to reconsider its prior decision to deny his request to return to him certain papers seized during the execution of a search warrant at the 3100 Vienna Woods address. (Doc. 301). Previously, Moore challenged the government's seizure of mail he received or documents connecting Moore to the address in question. (Doc. 287, #1580 (explaining that Moore objected to the seizure of "receipts, tax papers, paychecks, and 'notices'")). As the Court explained, such evidence had been properly seized because the search warrant authorized officers to seize "[a]ny records, written or electronic, tending to show … income … for said contraband, [and] any items tending to show ownership or control of said property, such as keys or mail." (Doc. 276-2, #1500). Moore does not contest this decision as a general matter but argues that the search warrant authorized seizure of such items only to the extent that it demonstrated Moore's "ownership or control of *said* property"—that is to say the 3100 Vienna Woods address. (*See* Doc. 301, #1635–36 (emphasis added)). And based on that reading of the search warrant, he concludes that any papers and effects officers seized from the 3100 Vienna Woods address that listed the *3151 Gobel* address were taken illegally. (*Id.*).

13

Contrary to the government's reading of the search warrant (which rests on the government's misquoting of the warrant), (Doc. 332, #1813), the Court agrees with Moore that papers listing the 3151 Gobel address that were taken from the 3100 Vienna Woods address fall outside the scope of the search warrant's plain language. (Doc. 276-2, #1500). But that does not end the inquiry as Moore believes. That is because "[d]uring a search, 'evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant.'" *United States v. Castro*, 881 F.3d 961, 967 (6th Cir. 2018) (quoting *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012)). As the Court has explained previously, the police investigation into Moore started with suspected drug trafficking activities at the 3151 Gobel address and then led to suspected drug trafficking activities at the 3100 Vienna Woods address, after the first spot was allegedly abandoned. (Doc. 249, #1385; Doc. 291, #1601–02). In other words, the government's investigation into drug trafficking at the two separate locations by the same dealer logically connects the two addresses as part of the same offense conduct. So although papers showing Moore's control over the (earlier known and investigated) 3151 Gobel address are not within the four corners of the Vienna Woods search warrant, such evidence "is reasonably related to the offense which formed the basis for that search warrant." *Castro*, 881 F.3d at 967 (cleaned up). In other words, at the time the officers were executing the warrant at the 3100 Vienna Woods address they *knew* of Moore's potential relationship to the 3151 Gobel address. The officers therefore were legally permitted to seize evidence related to that earlier address that

14

they discovered while searching the later address pursuant to the warrant. For this reason, the Court **DENIES** Moore's Corrected Motion to Return Papers/Property Illegally/Improperly Seized (Doc. 301).

Moore moves under Federal Rules of Civil Procedure 59(e)(3) and 60(b)(3) for the Court to reconsider and to amend its prior rulings in this matter. (Doc. 306, #1659 (citing Docs. 287, 291)). This motion largely rehashes Moore's arguments with respect to his contention that the initially assigned judge in this matter erroneously concluded that the evidence collected pursuant to several search warrants should not be suppressed. (*See* Doc. 249). And the motion contends that the undersigned in ruling on the previous motions failed to consider the full record of this case by not citing every filing Moore has put forward. (*See* Doc. 306, #1661–62).

The Court denies this motion. For starters, the Federal Rules of Civil Procedure do not apply to this criminal matter. Second, the Court has reviewed the entire docket in its evaluation of these matters. And as the Court explained previously, it concluded that most of the arguments that Moore raised related to suppression and *Franks* were contentions based on evidence already put before the prior judge when that judge denied Moore's suppression motion. (Doc. 287, #1564–66). In addition, the Court explained its reasons for denying these motions as moot to Moore at a prior status conference—a decision Moore acknowledged at the time. (*Id.* at #1564 n.9). Finally, as the Court explained at that conference, it will entertain Moore's suppression arguments, so long as he identifies a new basis in law or in fact that justify overlooking the law of the case. (*Id.* at #1566 (citing *United States v.*

*Madison*, No. 02-cr-20448, 2004 WL 5257959, at *2–3 (W.D. Tenn. Jan. 28, 2004))). Moore has taken advantage of this avenue since that time. (*E.g.*, Doc. 279).[17] As a result, the Court adheres to its prior rulings on these matters. But by doing so, the Court should not be understood as having overlooked any of the arguments Moore has proffered. The Court has reviewed everything Moore put forward and has concluded that not all arguments carry the same merit, especially given several contentions raised have been carefully considered previously and rejected.[18] The Court therefore **DENIES** Moore's Charge of Judicial Notice Pursuant 59(c)(3) Correct an Error of Fact or Law or Manifest of Injustice/Rule 60(b)(3) Fraud Whether Previously Called Intrinsic or Extrinsic, Misrepresentation, or Misconduct by Opposing Party/Failure to Address a Claim (Doc. 306).

Moore moves to have the Court hold a hearing on an alleged due process injury because of the prior judge's refusal to issue a writ of habeas corpus ad testificandum compelling one "Charlie Dailey" to appear at the suppression hearing. (Doc. 310). The prior assigned judge denied Moore's request because Dailey's counsel informed the

---

[17] *See also supra* Part A.

[18] In this spirit, as an example the Court notes that it has liberally construed Moore's "Supplemental argument for reconsideration in light of Newly discovered Evidence," (Doc. 358), as a reply, rather than an out-of-time motion (it was mailed on September 18, 2024), and considered Moore's arguments because he cited several of the government's responses. That said, the Court does not find Moore's arguments here persuasive since (1) he does not identify specific motions and responses he is replying to, and (2) the case he cites to is distinct from the situation here. (*Id.* at #1948–49 (citing *United States v. McMurtrey*, 704 F.3d 502, 505–06, 510 (7th Cir. 2013) (holding that the lower court erred in not granting defendant a full *Franks* hearing when it allowed the government to explain discrepancies in contradicting affidavits, where each affidavit listed a different address for the home police thought should be searched, and prohibited defendant from challenging those explanations in a pre-*Franks* hearing setting))).

Court that Dailey would be instructed to take the Fifth Amendment on the stand if forced to testify. (8/16/23 Min. Entry and Not. Order (denying Docs. 45, 46); Doc. 56, #398–400). That decision finds robust support in the caselaw expounding on defendants' Sixth Amendment rights to compel testimony: "A defendant's right to compel testimony yields to a witness's assertion of his … Fifth Amendment privilege when the claimed privilege is grounded on a reasonable fear of prosecution." *United States v. Luck*, 852 F.3d 615, 629 (6th Cir. 2017); *cf. Davis v. Straub*, 430 F.3d 281, 290 (6th Cir. 2005) (noting that the Supreme Court decisions reinforcing defendants' due process rights to call witnesses do not undermine a witness's ability to invoke the privilege against self-incrimination). Given Dailey planned to invoke this right, there would have been little to be gained by placing him on the stand simply not to testify. *Bowles v. United States*, 439 F.2d 536, 541–42 (D.C. Cir. 1970). And the Court can reasonably predict that given the nature of a suppression hearing—discussing how the government obtained incriminating evidence against the defendant—any relevant questions to be asked of such a witness would be reasonably and necessarily calibrated towards eliciting inculpatory responses. Accordingly, the invocation of the privilege against self-incrimination is plausible.

Although Moore conclusorily asserts that his questioning would not be likely to elicit incriminating responses, (Doc. 310, #1680), he does not provide any specifics as to what questions he intended to ask, or even what topics he intended to cover, to explain why he believes Dailey's "invocation was not grounded in a reasonable fear of prosecution." *Luck*, 852 F.3d at 629. Because Moore fails to do so, the Court cannot

17

conclude that the prior judge erred in excluding Dailey at the suppression hearing in light of the caselaw holding that there is no need to place a witness on the stand simply for him to invoke his Fifth Amendment rights. *Id.* The Court therefore **DENIES** Moore's Motion for Evidentiary Hearing/Due Process Inquiry (Doc. 310).[19]

Moore moves pursuant to Federal Rule of Evidence 201 for the Court "to take notice of the statutory violations occurring throughout this proceeding." (Doc. 315, #1718). However, this motion does not request that the Court take notice of judicially noticeable materials, which is what Rule 201 authorizes. Instead, the motion advances Moore's legal arguments that he believes demonstrate that government actors have violated several criminal laws in their prosecution of this matter. (*Id.* at #1718–21). A party's legal conclusions are not the proper subject matter for judicial notice. *Prows v. City of Oxford*, No. 1:22-cv-693, 2023 WL 7384684, at *4 (S.D. Ohio Nov. 8, 2023). Accordingly, the Court **DENIES** Moore's Judicial Charge Pursuant to Fed R. 201 (Doc. 315).

Moore also seeks to have the Court reconsider the prior decision ordering him detained pending trial. (Doc. 329). But as the Court has already rejected Moore's earlier challenge to his pretrial detention, (Doc. 135)—a decision that the Sixth Circuit affirmed, (Doc. 214)—Moore must "demonstrate … as a threshold matter … that his bond hearing may be reopened pursuant to 18 U.S.C. § 3142(f)." *United States v. Parish*, No. 1:21-cr-127-14, 2022 WL 3654892, at *2 (S.D. Ohio Aug.

---

[19] This motion also contains several pages in which Moore reiterates his arguments as to suppression, (Doc. 310, #1680–85), that have previously been rejected. *See supra* Part A. Accordingly, the Court does not retread the same ground and address those same arguments here.

25, 2022). Under 18 U.S.C. § 3142(f), a Court "may" reopen this issue only if Moore shows that there is new information not previously known and that such new information has "a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." Moore has not met these prerequisites. Even assuming his arguments about the merits of the prior denial of his request to suppress evidence can be considered "new information," Moore fails to explain how such arguments demonstrate that there are conditions ensuring his appearance and the safety of the community following his hypothetical release. Arguments about Moore's guilt or innocence of the crimes in question (which is what animates Moore's motion, where he maintains he has new evidence revealing why his various suppression motions should be granted) are not the focus of the Court's inquiry under the Bail Reform Act. *See United States v. Hulbert*, No. 1:23-cr-107-5, 2024 WL 2745060, at *5 (S.D. Ohio May 29, 2024). Given Moore's failure to address the prerequisites set forth in § 3142, along with his failure to put forth any evidence specifically addressing the non-appearance and dangerousness factors relevant to the detention decision as would be needed to overcome the statutory presumption of detention that applies here, (Doc. 214, #1227–29), the Court sees no reason to deviate from the Sixth-Circuit-affirmed decision to detain Moore pending trial. Accordingly, the Court **DENIES** Moore's Renewed Bond/Pre-trial Release Request in Light of New Evidence (Doc. 329).

**D.      Requests for Production of Evidence (Doc. 300, 317, 318, 335, 336, 340).**

There are several motions related to the production of evidence. Moore first moves for the government to produce the cellphone GPS data the government collected in its underlying investigation of this matter. (Doc. 300). Moore notes that the government has not yet provided this material, (*id.* at #1633), which the government acknowledged in its response, (Doc. 332, #1812–13), just the same as it did during the Court's August 14, 2024, status conference. However, in the government's most recent response, it says it has "exported and produced" a data file to Moore with latitude and longitude coordinates of the phone at specific times. (Doc. 356, #1944). Additionally, the government has provided Moore's standby counsel with instructions on how to use this data in online mapping tools. (*Id.*). Given the government's representations that it has produced the requested evidence in a usable format, and Moore's recent acknowledgment that he received it, (*see* Doc. 364, #1995), the Court **DENIES AS MOOT** Moore's Motion to Compel [sic] (Doc. 300).

Next, Moore moves to have the Court compel the government to produce "background 'detail'" about an email from the prosecutor in this matter to the standby counsel, which states in full: "I learned yesterday that there is not a positive ID on Moore the day of the sale re: Vienna woods. The window tint was too dark to see inside well enough to identify Moore that time." (Doc. 317, #1726–27). The government's response brief explains the reason for sending that email: the notice was intended to satisfy the government's *Brady* obligations and to correct "a misunderstanding by the United States." (Doc. 337, #1831). Given Moore's motion prompted the government to provide that background information, the Court need

not take any action and therefore **DENIES AS MOOT** Moore's Motion to Compel Gov's [sic] Disclosure (Doc. 317).

Moore also seeks to have the Court compel the government to produce the various chains of custody for the evidence obtained during the controlled buys executed as part of the local authorities' investigation into this matter. (Doc. 318). The government maintains that it has presented the relevant evidence to Moore by providing "copies of the controlled buys" (the Court is not entirely clear what the government means by this), "laboratory reports," and an opportunity "to examine the drugs and their evidence envelopes." (Doc. 337, #1831). And the government represents that the analyst the government intends to call will testify about the marking of evidence that comes into the lab, which forms a part of the chain of custody. (*Id.*). While the government's explanation is not the paragon of clarity, it does appear the government has provided the relevant details regarding the chain of custody for the various pieces of evidence—including the evidence envelopes, which generally have markings on them reflecting which parties handled the materials. The Court therefore (cautiously) **DENIES AS MOOT** Moore's Motion to Compel Chain of Custody Regarding Controlled Buy (Doc. 318). But to the extent that the Court has misunderstood the government's representations and Moore can explain more specifically what evidence related to the chain of custody (for example, ledgers, sign-out sheets, or similar) that he believes he should have received but did not, the Court will revisit this denial.

21

Moore requests that the Court compel the government to produce a written transcript of a telephone status conference held by the then-assigned judge on February 5, 2024. (Doc. 335). The Court had previously ordered the production of this transcript for Moore to review, (7/3/24 Not. Order), which was electronically filed on the docket August 2, 2024, (Doc. 313). While the Court is uncertain why the transcript was not produced to Moore previously, the government states that it "forwarded the electronic version of the transcript to stand-by counsel." (Doc. 356, #1940). So Moore should already have the document. Accordingly, the Court **DENIES AS MOOT** Moore's Motion to Compel Government to Produce Written Transcript (Doc. 335).

Moore again moves to compel the government to produce the body camera footage for the search of the 3151 Gobel Avenue and 3100 Vienna Woods locations as well as his arrest. (Docs. 336, 340). The Court previously agreed that such evidence was material to Moore's case and that he was entitled to discovery of such material—assuming it existed. (Doc. 287, #1583–84).[20] The Court's emphasis on the contingent nature of the decision, (*see id.* at #1584 (stating not one, but twice "if it exists")), matters because the government "cannot be compelled to produce video footage that does not exist." *Perry v. Warden Warren Corr. Inst.*, No. 1:20-cv-30, 2021 WL 2808708, at *3 (S.D. Ohio July 6, 2021). That appears to be the case here for at least some of

---

[20] Moore selectively quotes from the Omnibus Order and omits determinative language in which the Court twice stressed that, "if it exists," the government was required to provide the body camera footage. (Doc. 287, #1584). The footage does not exist, so the government cannot produce it. For these reasons, the Court **DENIES** Moore's Supplemental Arguement [sic] for Reconsideration in Light of Newly Produced Evidence (Doc. 339) and Charge of Judicial Notice of Governments [sic] Discovery Abuse and Official Request for Sanction (Doc. 341), both of which request the Court to sanction the government for failing to comply with its discovery obligations.

the requested evidence. The government says that "all footage in the United States' possession has been produced."[21] (Doc. 356, #1941). Moore also acknowledges seeing the body camera footage to which the government refers—he is just not satisfied with what it shows (or does not show). (*See* Doc. 343, #1856–58 ("Defendant was transported to the U.S. Potter Stewart courthouse to view the body worn camera of law enforcement of the search and arrest of the Defendant. It … showed absolutely no search or recovery of the charged contraband.")). Accordingly, the Court **DENIES AS MOOT** Moore's Supplemental Motion to Compel [sic] (Doc. 336) and Motion to Compel [sic] Government to Produce Court Ordered Body Camera Footage (Doc. 340).

### E.   Evidentiary Motions (Docs. 298, 302, 316, 323, 324, 346)

The remaining motions raise evidentiary objections to evidence the parties seek to admit at trial.[22] Moore has filed seven such motions. (Docs. 298, 302, 316, 323, 324, 346).

First, Moore moves to have the Court exclude evidence the government purportedly produced to him on June 24, 2024, which evidence he describes as "two leases[,] … a 'text note' drafted[,] and [a] screen shot from an i-Phone [sic]." (Doc. 298,

---

[21] The government explains that the only body camera footage preserved by the Cincinnati Police Department (CPD) at the time of its request for the footage was from the search of 3100 Vienna Woods. (Doc. 356, #1941). That footage did not show the collection of evidence after the residence was cleared. (*Id.* at 1942). The government claims that the other body camera footage was deleted per CPD policy before the United States' involvement in this case. (*Id.* at 1941).

[22] As explained in the Court's prior Omnibus Order, several motions in limine on the docket have been addressed and will be definitively ruled on at trial. (Doc. 287, #1584–90 (citing Docs. 36, 50, 93, 110, 142, 230, and 251)). Those deferrals are not affected by the Court's decision today.

#1625). Moore claims the documents have not been properly authenticated—citing Federal Rule of Evidence 902(11)—and asks the Court to treat such documents as inadmissible hearsay under Federal Rule of Evidence 803(6). The problem for Moore is that he has not attached such documents to his motion, which means the Court has no basis for assessing these arguments. And while the government must present "a certification of the custodian" of the records explaining how such records meet the requirements found in Rule 803(6) to constitute business records that are excepted from the bar on hearsay evidence (assuming that is the basis for the government's introduction of such evidence), the government maintains that it sent such certificates to Moore nearly a year ago. (Doc. 332, #1812). Accordingly, from what little information the Court has (which at this point is solely the parties' arguments), Moore's contention is without merit. For that reason, the Court must **DENY** Moore's Motion in Limine for Findings that Records Maintained by Plaintiff are Admissable [sic] as Business Records Pursuant to Fed R. Evid 803(6) and Have Been Properly Certified Under Fed R. Evid 902(11) (Doc. 298). But the denial is without prejudice to raising an objection when the government proffers this evidence at trial—at that time, the Court will have enough information to make an evidentiary ruling on the matter.

One of Moore's filings appears to object to the admissibility of the government's proposed Rule 404(b) evidence.[23] (Doc. 302). While the Court will revisit these issues

---

[23] The brief also raises a couple of other issues not related to the admissibility of evidence. First, Moore rehashes the arguments he offered to support his position that the government's evidence related to the controlled buys should be suppressed. (Doc. 302, #1645–46). The Court

when the evidence is proffered at trial, it finds no reason to exclude the proposed evidence based on a review of the government's notice, (Doc. 286), and Moore's objections. The social media evidence and text messages connecting Moore to (even uncharged) drug trafficking activities could be admissible, for example, to provide context to the jury for the government's investigation of this matter. (*See* Doc. 287, #1586 (citing *United States v. Wilson*, 837 F. App'x 396, 399–400 (6th Cir. 2020)). As to the YouTube video, the government can put forward a witness who has seen the 3151 Gobel address, such as Officer Connley, to testify that the background of that video matches the interior of the Gobel apartment. *See United States v. Halter*, 259 F. App'x 738, 741 (6th Cir. 2008) (upholding jury's determination about the subjects of photo and video evidence based on trial testimony about those subjects). The same goes for the video that "appears" to show Moore driving up to the 3151 Gobel address, (Doc. 302, #1647)—the government may offer a foundation for the relevance of this video by calling an officer familiar with the apartment, this investigation, and the video itself to testify to what is depicted. *United States v. Thomas*, 701 F. App'x 414, 418 (6th Cir. 2017) (allowing officer testimony to serve as foundation for admissibility of photo evidence).

---

does not address those again here, given it already adjudicated (and rejected) those contentions previously and above. *See supra* Part A. Second, Moore objects that he has not received certain evidence (cellphone tracking data) from the government that he has requested. (Doc. 302, #1646–47). He has now. *See supra* Part D. And third, Moore appears to argue about what the government's DNA evidence demonstrates. (Doc. 302, #1647 (arguing the government lacks "<u>any</u> positive DNA findings" (emphasis in original))). The Court cannot and does not take a position on what the evidence does or does not show—that is for the trier of fact.

Moore's objections related to the government's evidence concerning the controlled buys again boils down to his contention that the government is required to proffer the confidential informant to have such evidence admitted at trial. (Doc. 302, #1645–47). The Court explained in its earlier ruling why that argument does not require wholesale exclusion of such evidence before it is introduced at trial and therefore does not repeat that explanation here. (Doc. 287, #1589–90). And Moore's remaining objections are also addressed in other motions the Court rules on today, (Doc. 302, #1647 (raising arguments also raised in Doc. 323, which is discussed below)), or were previously addressed by the Court in a prior order, (*id.* at #1647–48 (raising an argument presented in Docs. 50, 251, which the Court addressed in its July 2, 2024, Omnibus Order (Doc. 287, #1586–87, 1589))). Accordingly, the Court finds that the government's proposed Rule 404 evidence to which Moore objects is not categorically inadmissible. As is the case with almost all of the other evidentiary objections, the Court will evaluate these issues in more detail and definitively rule on them when the evidence is proffered at trial.

Next, Moore moves to exclude what he describes as a "phone affidavit" that the government purportedly described as "hav[ing] no bearing" on this case.[24] (Doc. 316,

---

[24] The Court reviewed the portion of the suppression transcript to which Moore's motion refers, and it is not certain whether Moore is correct that the government stated that the "phone affidavit" had no bearing on this case. The prosecutor's statement is ambiguous. On the one hand, he could be understood to state that the parties had already discussed the "phone affidavit" and then to reiterate that the search warrant at the 2300 Ferguson Avenue location is what has no bearing on this matter. (*See* Doc. 56, #370). Or he could be referring to both the Ferguson Avenue search warrant *and* the phone affidavit as irrelevant. Given that the Court lacks sufficient information regarding for what the government may or may not offer this evidence at trial, this ambiguity further justifies deferring on the evidentiary matter until trial.

#1723). As the Court did previously when it addressed Moore's motion to exclude evidence related to a search warrant at a 2300 Ferguson Avenue location, (Doc. 287, #1585–86), it will defer ruling on this issue because the government may in fact have a valid purpose for presenting this evidence to the jury. *See United States v. Wilson*, 837 F. App'x 396, 399–400 (6th Cir. 2020) (explaining that evidence of uncharged drug sales was admissible because it constituted useful background evidence connecting the defendant to the charged conduct and location in question). And of course, Rule 403 and the availability of limiting instructions are background principles that will govern the Court's assessment at that time.

Moore moves to have the Court exclude text conversations between himself and other non-testifying parties on the basis that the messages are inadmissible hearsay. (Doc. 323). The Court finds no hearsay problem here. For any of the messages Moore himself sent, those out-of-court statements are admissible party-opponent statements, which are excluded from the definition of hearsay. Fed. R. Evid. 801(d)(2)(A). The other parties' messages, though, would constitute hearsay for which no exception applies if the government introduces them for the truth of the matter asserted. But the government may properly introduce the other parties' portions of conversation without violating the rule against hearsay simply to "provide context to [the defendant's] own statements." *United States v. Dunnican*, 961 F.3d 859, 873 (6th Cir. 2020) (quotation omitted). In other words, so long as the government offers the third parties' half of the text threads to fill out the context for the messages Moore

sent, the evidence is admissible.[25] So subject to revisiting the matter at trial, the Court **DENIES** Moore's Motion to Exclude Statements by Non-testifying Witness Pursuant FREvid [sic] 801 & 802 (Doc. 323).

Moore also moves, pursuant to a provision found in the Protection of Lawful Commerce in Arms Act (PLCAA), Pub. L. No. 109-92, 119 Stat. 2095 (2005) (codified in scattered sections of 15 U.S.C. and 18 U.S.C.), to exclude all evidence of his liability for the charges leveled against him under 18 U.S.C. §§ 922, 924. (Doc. 324).[26] The PLCAA amended Title 18 to impose criminal liability for gun manufacturers that sell firearms to individuals without providing the buyer with "a secure gun storage or safety device." PLCAA § 5(c) (adding subsection (z) to 18 U.S.C. § 922 and imposing corresponding penalties by adding subsection (p) to 18 U.S.C. § 924). The PLCAA also includes a rule of construction and a rule of evidence that bar introduction of evidence

---

[25] Moore also seems to object to the evidence as purportedly unauthenticated. (*See* Doc. 323, #1752). But the government has provided notice that it intends to offer an expert witness who will lay the foundation for how this evidence was obtained and to authenticate the recordation of these conversations. (Doc. 209, #1160). Accordingly, this objection lacks merit, as the government has represented that it will be able to lay the proper evidentiary foundation for this evidence.

[26] The Court takes issue with the government's abject failure to address this motion in its response, where it resorts instead to claiming that the motion "makes no sense" and to referring to the motion as "a frivolous waste of the Court's time." (Doc. 337, #1835). To the contrary, Moore's motion reveals exactly what he is arguing—that he believes the PLCAA bars the government's presentation of evidence of his compliance or noncompliance with the provisions of 18 U.S.C. §§ 922, 924. While the Court determines the argument is meritless, the motion was not inscrutable or difficult to figure out. As the Court has noted before, "the government's [] unnecessarily charged language and characterizations of Moore's arguments in its responsive briefing do not help. In fact, in at least some instances, the nature of the government's responses has made it more difficult for the Court … The Court understands the government's frustrations in dealing with the often duplicative, and many times wholly meritless, filings Moore has tendered in this case. But the Court nonetheless expects all parties to remain respectful, even when one party is representing himself pro se and is not as familiar with the litigation process." (Doc. 287, #1552 n.*).

of a manufacturers' "compliance or noncompliance" with the gun safety rules "in any proceeding of any court … except with respect to an action relating to section 922(z)." *Id.* § 5(c)(3). These provisions do not apply to Moore. He is not accused of being a "licensed importer, licensed manufacturer, or licensed dealer to sell, deliver, or transfer any handgun." 18 U.S.C. § 922(z)(1). Nor is he subject to a civil action for a third party's improper use of a weapon in his possession. *Id.* § 922(z)(3). Accordingly, the Court **DENIES** Moore's Motion to Exclude/Strike All Liability; Evidence Pursuant 18 U.S.C. 922 L-109-92, Sec 5(c)(3), 119 Stat. 2101 (Doc. 324).

Moore also filed a motion asking the Court to prevent the government from introducing testimony from (or really any evidence related to) Officer Connley at trial based on Moore's belief that Connley committed perjury during the investigation of this case.[27] (Doc. 346 at #1872–73). This motion fails along several dimensions. First, Moore's asserted basis for seeking this relief is 28 U.S.C. § 1361, which grants federal district courts jurisdiction over mandamus actions. The case before the Court is criminal in nature and therefore the Court is not presiding over an action "in the nature of mandamus." 28 U.S.C. § 1361. Second, mandamus is "an extraordinary remedy that is used infrequently and only available when no other remedies exist." *Estep v. Comm'r of Soc. Sec.*, No. 1:22-cv-474, 2024 WL 126382, at *4 n.7 (S.D. Ohio Jan. 11, 2024) (quotation omitted). Here, plenty of other remedies for excluding evidence exist: motions to suppress, motions in limine, or objections at trial to name a few. So Moore's motion is not well-taken in this respect. But even construing this

---

[27] While the government's latest response indicates a response to this motion is contained within it, no such response exists.

motion liberally it fails as it simply represents another attempt to litigate the (already thoroughly litigated) suppression issues through the language of 'exclusion of evidence.' The Court has evaluated and rejected Moore's theories as to why Connley committed perjury. (Doc. 287, #1564–66). The suppression matters in this case are therefore law of the case. (*Id.* at #1566). Accordingly, because Connley is a relevant, material witness (as the primary investigating officer of this criminal matter), the Court has no basis to exclude evidence related to him or his testimony wholesale.[28] Accordingly, the Court **DENIES** Moore's Motion for Action to Compel an Officer of the United States to Perform his Duty Pursuant [sic] 28 U.S.C. 1361 (Doc. 346).

## CONCLUSION

For the reasons given above, the Court **DENIES** (Docs. 301, 304, 306, 310, 315, 320, 321, 322, 323, 324, 325, 327, 329, 339, 341, 343, 346, and 351); **DENIES AS MOOT** (Docs. 300, 317, 318, 335, 336, and 340); **DENIES WITHOUT PREJUDICE** (Doc. 298); **DEFERS ITS RULING UNTIL TRIAL** (Docs. 302 and 316); and **STRIKES** (Docs. 353, 354, 359, 360, and 364).

**SO ORDERED.**

October 3, 2024
**DATE**

**DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE**

---

[28] Evidentiary objections specific to the evidence proffered or as testimony is given at trial will be evaluated at that time—but of course, such objections must be specific and granular to the circumstances as they arise.